**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Appellee,**

v.

**Stephen M. ENGELHARDT, Appellant.**

**No. 01–0052.**

Supreme Court of Iowa.

July 5, 2001.

Bruce Lundy Butler, Des Moines, and William Sidney Smith of Smith, Schneider, Stiles & Serangeli, P.C., Des Moines, for appellant.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for appellee.

CARTER, Justice.

Attorney Stephen M. Engelhardt (respondent) appeals from the findings and recommendations of the grievance commission following the trial of a disciplinary complaint. The commission found that respondent had violated the Iowa Code of Professional Responsibility for Lawyers by failing to timely file state income tax returns and employee withholding tax declarations for several years and in failing to respond to the investigation of his conduct by disciplinary authorities. The commission recommended respondent's license be suspended without possibility of reinstatement for a period of one year.

The evidence presented at the hearing before the commission revealed that prior to the calendar year 1989 respondent personally prepared and filed his federal and state income tax returns. In the spring of 1990 when his 1989 returns were due, he experienced some turmoil surrounding his impending call-up as a reserve officer for participation in the Gulf War. Consequently, a proper application to extend the filing dates was filed along with a payment of the estimated tax due. Gulf War participants were eligible for a more generous extension of time for filing income tax returns than were ordinary taxpayers. In the fall of 1990, respondent was called to active duty. His wife, Barbara, who worked in his law office in a secretarial capacity, assumed the responsibility for filing the 1989 federal and state income tax returns. Although respondent returned from the Gulf War in April of 1991, he continued the delegation of tax return preparation to Barbara for the calendar years 1990 through 1997.

Authorities from the Iowa Department of Revenue and Finance provided evidence that respondent's 1989, 1990, and 1991 Iowa income tax returns had not been filed at the time of the disciplinary proceeding. An agent of the Internal Revenue Service indicated that federal returns for those same years were not timely filed and that during an audit in 1993 and 1994 copies of those returns were produced from respondent's files. At this time these copies were signed by respondent and his wife and delivered to the agent for the purpose of satisfying their federal filing obligations for the 1989, 1990, and 1991 calendar years. Respondent and his wife both maintain that this constituted a second filing of their federal returns for those years and that, although state revenue authorities say otherwise, their state income tax returns for those years were also filed within the period of extension. On the evidence presented, the grievance commission found that their Iowa income tax returns for those three years were never filed.

Iowa income tax returns for respondent and his wife for the years 1992, 1993, 1994, 1995, and 1997 were filed after the statutory due date and not within any period of

extension that may have been granted. In this regard, respondent's wife testified that at times she prepared tax returns that respondent signed but that she did not file because she believed they were incorrect. With the exception of the return due for the quarter ending December 31, 1994, respondent did not file any of the Iowa quarterly employee withholding tax returns for employees in his office, nor make appropriate deposit therefor during the period from March 31, 1993, through January 31, 1997.

In 1993 and 1994 an agent of the Internal Revenue Service spent considerable time in respondent's law office auditing respondent's federal returns for several tax years. Respondent spoke briefly with this agent but delegated the responsibility for assisting in the audit to his wife. She did not reveal to respondent that she was not providing all documents requested by the Internal Revenue Service. She testified that, when respondent would inquire as to the status of the audit, she would conceal vital information from him.

Respondent's wife testified that at some time during the federal audit in 1993 or 1994 she revealed to respondent that the Iowa quarterly withholding tax returns and required deposits had not been filed for several quarters. Based on additional testimony of respondent and his wife on the withholding problem, the grievance commission found:

> After 1993, when Respondent became aware of the income tax issues, he would occasionally ask Barbara [his wife] if she was filing withholding returns and paying the taxes. She would indicate to him that "everything was taken care of." Respondent did nothing further to verify that his office was in compliance.

In 1995 respondent contacted a public accountant to assist his wife with the tax matters. She was resistive of the accoun-

tant's efforts and denied him access to records that he needed to perform his function. Subsequently, respondent deferred to his wife's judgment that the accountant was not needed and terminated his services.

In March of 1997 the Iowa Department of Revenue and Finance contacted respondent concerning his failure to file quarterly withholding tax declarations with regard to the employee payroll taxes. The discussions that ensued with revenue authorities resulted in withholding tax returns for the quarters in question (all but one calendar quarter between March 31, 1993, and January 31, 1997) being filed sometime in 1997 along with required deposits. At this time respondent was also advised by state revenue authorities that his state income tax returns for several years had not been filed. Notwithstanding this knowledge, he delegated the filing of the 1997 state and federal income tax returns to his wife because he could not decipher her bookkeeping records so as to prepare the returns himself. His wife did not file the 1997 Iowa income tax return on time. Respondent did not act to verify a timely filing of that return. It does not appear in the record that any Iowa income tax return for that year was presented for his signature within the time required for a timely filing.

In the spring of 1999, respondent and his wife were each charged with five felony counts involving willful failure to timely file state income tax returns and willful failure to timely file quarterly returns of employee taxes withheld. The income tax charges did not relate to the years 1989, 1990, or 1991. They pertain to calendar years 1992, 1994, and 1995. Ultimately on September 21, 1999, a plea agreement was reached whereby respondent's wife pled guilty to one serious misdemeanor count of willful failure to file withholding tax re-

turns and respondent entered an *Alford* plea to a similar count.

Upon receiving notice of respondent's criminal conviction, the Iowa Supreme Court Board of Professional Ethics and Conduct notified him on November 1, 1999, that it was investigating the facts surrounding this matter. This notice requested that he provide the board with a written explanation of his conduct. On November 17, 1999, respondent wrote to the board requesting an extension of time to respond to the board's request. The board granted him an extension until December 21, 1999, in which to respond. Respondent did not respond within this time, and on January 11, 2000, he wrote the board stating he would comply with its request by the seventeenth or eighteenth of that month. The board was still waiting for the response on March 10, 2000, and, at that time, wrote respondent that it was filing a disciplinary complaint on the tax matter as well as on his failure to respond to the board's requests for information. Respondent finally provided the information that the board sought on April 12, 2000.

Respondent was also the subject of a complaint filed by a client in March of 1999. On April 16, 1999, he sought twenty days beyond April 26 to respond to the board's request for information concerning this complaint. This request was granted granting him until May 16 within which to respond. Respondent did not respond until June 18.

Later, on October 28, 1999, the board sought additional specific information concerning the client's complaint. The information sought included a copy of the petition that respondent claimed to have drafted at the client's request, a copy of respondent's trust account ledger showing the deposit of a $350 retainer, and itemized statements of any billings or corre- spondence with the client. On November 17, 1999, respondent requested an additional thirty days within which to provide the requested information. The board denied that request and advised respondent that it expected a timely response to the most recent request for information. The board next heard from respondent on January 11, 2000, when he wrote stating: "If my staff will work through the weekend, I should have a formal response to you on the pending complaints by Monday or Tuesday." The board still had not received a response on March 10, 2000, and advised respondent of its intention to file a disciplinary complaint based on his non-cooperation. The information requested was not provided by respondent until sometime in October of that year.

■ Respondent seeks to minimize the consequences of his late filing of Iowa income tax returns and quarterly withholding tax statements on the basis that he relied in good faith on his wife's assurance that both the income tax matters and withholding matters were being taken care of. He argues that, in the case of the Iowa income tax returns for at least two calendar years, his wife prepared returns for his signature but, without informing him, failed to file them. This assertion was corroborated by the testimony of his wife. In response to these contentions, the grievance commission concluded:

> The commission unanimously believes that Respondent unreasonably and recklessly over an extended period of time wholly delegated his personal, legal responsibilities as a taxpayer to his spouse and in so doing abrogated his individual responsibilities as a taxpayer and his duties as a lawyer.

> Respondent's unreasonable course of conduct, which he voluntarily undertook over an extended period of time, resulted in his conviction of a fraudulent prac-

tice which is a crime involving moral turpitude.

We generally share the commission's views concerning respondent's culpability. With respect to the criminal conviction that occurred here, his guilty plea, notwithstanding its *Alford* character, precludes him from contending that he was not guilty of that offense. *See AID Ins. Co. v. Chrest*, 336 N.W.2d 437, 439–40 (Iowa 1983). We agree with the commission that respondent's conduct constituted a violation of DR 1–102(A)(5) (conduct that is prejudicial to the administration of justice) of the Iowa Code of Professional Responsibility for Lawyers.

■ Respondent seeks to justify his delay in responding to the ethics board's request for information on the ground that some of the tax information was in the possession of Iowa Department of Revenue authorities. Concerning the other material, he testified that a fire in a building adjacent to his law firm caused a major disruption of his files and, during the cleanup process, he acquired pneumonia. As the ethics board argues, it was never claimed at the time that this information was sought that the documents were exclusively in the possession of revenue authorities, and there was no attempt to release such documents to the board. Concerning the disruption of files caused by the fire and respondent's illness, the board argues that the delay in producing the requested material was unreasonable notwithstanding those circumstances. Although respondent did face some obstacles in making a timely compliance to the board's request, we agree with the commission's finding that there was some foot dragging on his part. This conduct was a violation of DR 1–102(A)(5) (conduct that is prejudicial to the administration of justice) of the Iowa Code of Professional Responsibility for Lawyers.

Respondent urges that the only provision in the ethics board's rules that establishes a fixed time to reply to a request for information from the board is rule 3.3, which is triggered if no response is received in twenty days. Rule 3.2 and 3.3 of the Iowa Supreme Court Board of Professional Ethics and Conduct provide:

3.2 The board shall forward to the respondent by restricted certified mail, marked "Confidential," or by personal service in the manner of an original notice in civil suits, a copy of the complaint, requesting a written response thereto, and copies of the board's rules and of supreme court rule 118.

3.3 If after twenty days, no such response has been received, the respondent shall be notified by restricted certified mail that unless a response is made within ten days from receipt of notice, the board may file a complaint with the grievance commission for failure to respond, and concerning all or any portion of the matter about which the original complaint was made.

Assuming that respondent's interpretation of these rules is correct, it avails him of nothing in the present dispute. In response to two of the three requests for information, he acknowledged that he had a problem in responding within the time he was (or would be) required to respond to the board's request. He requested an extension of time. That request resulted in a fixed time for response being established by the board. Thus, respondent may not claim that he was unaware of the time within which he was required to respond. On the third request for information, he asked for additional time, and that request was denied. Implicit in the letter denying his request was a directive that he respond within an ascertainable period of time.

■ In seeking to apply appropriate discipline in the present matter, we are

cognizant of our decisions in other cases involving criminal convictions for violation of state revenue laws. In *Committee on Professional Ethics & Conduct v. Jones,* 368 N.W.2d 157, 158 (Iowa 1985), an attorney pled guilty to an aggravated misdemeanor embraced in one count of a multicount information alleging several years of failure to file Iowa income tax returns. We found that this conduct warranted a fifteen-month suspension. In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Wickey,* 619 N.W.2d 319, 321 (Iowa 2000), an attorney was convicted of a single aggravated misdemeanor count based on a multicount information alleging failure to timely file tax returns over a period of five years. We found that the conduct in that case warranted a suspension of six months. A six-month suspension was also deemed appropriate in *Iowa Supreme Court Board of Professional Ethics & Conduct v. Runge,* 588 N.W.2d 116, 119 (Iowa 1999), in which an attorney pled guilty to a single aggravated misdemeanor count to a multicount information alleging failure to file Iowa income tax returns for four years. In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Morris,* 604 N.W.2d 653, 656 (Iowa 2000), we concluded that an attorney who had twice been previously disciplined for ethical violations should have a six-month suspension for failure to file quarterly withholding tax declarations for his secretary over a period of more than two years.

Considering all of the circumstances of this case, we order that the license of attorney Stephen M. Engelhardt be suspended for an indefinite period of time with no possibility of reinstatement within six months from the filing of this opinion. This suspension applies to all aspects of the practice of law. *See* Ct. R. 118.12. Upon application for reinstatement, respondent shall have the burden to prove he has not practiced law during the period of

suspension and has met the client-notification requirements of Court Rule 118.18. Costs of this proceeding are assessed against respondent, and payment of same shall be made prior to seeking reinstatement.

**LICENSE SUSPENDED.**

All justices concur except LARSON and SNELL, JJ., who take no part.