# IN THE SUPREME COURT OF IOWA

No. 19–1862

Filed May 15, 2020

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**JENNIFER L. MEYER,**

Respondent.

---

On review of the report of the Iowa Supreme Court Grievance Commission.

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against attorney alleging she violated three rules of professional conduct. **LICENSE SUSPENDED.**

Tara van Brederode and Wendell J. Harms, Des Moines, for complainant.

Leon Spies of Spies & Pavelich, Iowa City, for respondent.

**WATERMAN, Justice.**

Attorney Jennifer Meyer entered an *Alford* plea to third-degree theft and was ordered to pay $102,989.95 in restitution after a special investigation by the state auditor found she billed the state public defender (SPD) for services she did not provide and collected reimbursement for expenses she did not incur. The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against Meyer, alleging she violated three rules of professional conduct in connection with her *Alford* plea: Iowa Rules of Professional Conduct 32:1.5(a) (unreasonable fees or expenses), 32:8.4(b) (commission of a criminal act), and 32:8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation). A division of the Iowa Supreme Court Grievance Commission found Meyer violated those rules and recommended a sixty-day suspension. On our de novo review, we find Meyer violated all three rules and suspend her from the practice of law for one year.

## I. Background Facts and Proceedings.

We make the following findings based upon our de novo review of the record. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moran*, 919 N.W.2d 754, 756 (Iowa 2018).

**A. The SPD Contract and Audit.** Meyer was hired as a contract attorney with the SPD in October 2002. The SPD periodically renewed her contract. The scope of Meyer's representation expanded to include court-appointed practice in seven Iowa counties and consisted primarily of indigent criminal defense. She described her practice as "busy," estimating that she opened approximately 2100 files during 2010–2012.

The SPD contract required that Meyer claim fees only for "actual time and expenses reasonably necessary to properly represent" her clients.

She was also required to follow SPD rules for mileage reimbursement. The contract required that Meyer maintain records.

> Contractor shall maintain books, records, documents, and other evidence of accounting procedures and practices which sufficiently and properly reflect the services performed and for which payment was requested or which relate to the work performed pursuant to this contract. . . . Contractor shall retain all books, records, documents and other relevant materials for five years after payment has been made under this contract.

For each claim Meyer submitted to the SPD, she certified she was entitled to the requested payment.

> I, the undersigned attorney, certify that I have completed my services under the appointment; that I have not received nor have I entered into any agreement to receive compensation for these services, direct or indirect, from any source other than the State Public Defender; and that the above information summarizes the services and expenses for which I am entitled to payment. I further state that an itemized statement of services and expenses is attached hereto and a copy has been provided to my client.

SPD initially approved or disapproved Meyer's submitted billings on a case-by-case basis. During the autumn of 2013, however, the SPD reviewed Meyer's previously approved billings on a per-day basis rather than a per-case basis.

In a letter to Meyer dated September 24, 2013, the state public defender, Samuel Langholz, raised concerns about her billing practices and mileage expenses. Langholz noted Meyer billed SPD more than 2591 hours in fiscal year 2010 and at least 2089 hours in fiscal year 2011. When Langholz added up Meyer's hours charged per day in multiple cases, he noticed that Meyer had billed the SPD twenty-four hours or more in a single day on nineteen different dates. Langholz and Meyer met on October 9 to discuss his concerns.

Six days later, Meyer wrote Langholz to report she was unable to reconstruct her total billings by day. Meyer stated she dictated her billings prepared by her secretary and then would often make handwritten edits to the invoices, usually to correct time entries. Those changes were not reentered in the billing software.

> As we discussed at our [October 9] meeting, I reviewed my billing on a case-by-case basis prior to submitting bills to your office . . . . Following our meeting, I continued to review the days in question, however, unfortunately because I dictated almost all entries, reconstructing each day is not a viable option. I take full responsibility for not tracking my billable time in a way that allow[s] me to review the amount of time billed for each day, not just the work done itself. . . . The dictation was deleted by my secretary upon entry of the time into the billing system.

Meyer stated that billing errors could occur when her secretary billed on the days "the letter or document was actually mailed out to the client," rather than the actual days Meyer worked on the case. "Time may have been entered from days or weeks prior, depending on when the information was entered. . . ." According to Meyer, this explained how the hours worked on one day could be entered on another, creating the artificially high number of hours for a particular day. Meyer insisted all of the time billed was for work she actually performed, even if the dates were billed incorrectly.

The SPD renewed Meyer's contract on November 2013, which was set to expire on January 3, 2014. However, on December 30, 2013, Langholz notified Meyer that the SPD would not renew the contract. Langholz rejected Meyer's explanation for the high billing days.

> Your time records do not always reflect that the days surrounding these highest-billing days were unusually low as would be expected if these high billing days were merely the result of secretarial date entry errors. And you did occasionally bill time on the weekends further undermining this explanation. Moreover, your total hours claimed during

these time periods casts further doubt on the accuracy of the submissions. From July 1, 2009 to June 30, 2010 – the period for which we have the highest volume of claims data analyzed – you billed nearly 2,600 hours, which is a high number of billable hours for any attorney, particularly within Iowa. And in July 2009, you billed 353.8 hours – an amount that is highly improbable for an individual to bill in a single month, considering that it would require billing more than eleven hours a day for thirty-one days straight, and keeping in mind that such a monthly rate would result in annual billable hours totaling 4,245.6.

The SPD review also revealed discrepancies with Meyer's claims for mileage reimbursement. Specifically, Meyer at times billed multiple clients for the full mileage to the same location on the same day. Langholz determined at least 2853 miles of reimbursement were improperly claimed. Meyer paid the SPD $998.60 in an effort to resolve the contention that she overbilled mileage.

It became apparent that improprieties with the SPD billing fees and mileage expenses were not limited to Meyer. As a result, the state auditor conducted a special investigation of the SPD. Meyer and thirteen other attorneys were audited, leading to disciplinary charges. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Noel*, 923 N.W.2d 575, 580, 591 (Iowa 2019) (suspending an attorney's license for one year in a disciplinary case that arose from this SPD audit); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Mathahs*, 918 N.W.2d 487, 491, 500 (Iowa 2018) (suspending an attorney's license for sixty days in a disciplinary case that arose from this SPD audit). The audit included an examination of Meyer's fees and expenses from August 2009 through August 2013. The auditor found thirty days on which Meyer billed SPD twenty-four hours or more. And on 317 days, Meyer billed SPD 12.1 hours or more for combined billings totaling $101,220. For the same period, the auditor identified 147 trips in which

Meyer duplicated her mileage reimbursement, totaling $2768.55 for 7910 miles traveled.

**B. The Criminal Proceedings.** In June 2016, the Iowa attorney general filed a two-count trial information against Meyer. Count I charged Meyer with first-degree fraudulent practice, a class "C" felony, in violation of Iowa Code sections 714.8(3), 714.9, and 714.14 (2016). Count II charged Meyer with first-degree theft, a class "C" felony, in violation of Iowa Code sections 714.1(1), 714.1(3), 714.2(1), and 714.3. The state alleged Meyer "did knowingly tender false certificates given in support of claims for compensation, where the total amount of money exceeds $10,000" and "did take possession of property of the State of Iowa with the intent to deprive thereof, or did obtain a transfer of possession of the property . . . by deception, where the amount of money involved exceeds $10,000" from 2009 to June 30, 2013.

Meyer entered a written *Alford*[1] plea to the lesser included offense of third-degree theft, an aggravated misdemeanor, in violation of Iowa Code sections 714.1(3) and 714.2(3). The statutory value of third-degree theft is capped at property not exceeding $1000. Iowa Code § 714.2(3). Meyer's *Alford* plea stated,

> I have read the Minutes of Testimony filed with the Trial Information, and do not contest the accuracy of those minutes except for: <u>I am pleading guilty because I understand that a reasonable jury could find me guilty beyond a reasonable doubt, and enter this plea with the advice of counsel and to take advantage of the plea agreement</u>.

The parties jointly recommended probation for two years and that Meyer pay restitution. The district court accepted the plea, finding there was "strong evidence of [Meyer]'s guilt which substantially negate[d] [her] claim

---

[1]*North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970).

of innocence." On April 26, 2018, the district court sentenced Meyer to two-year's probation, a deferred judgment, and a $625 civil penalty. Meyer was ordered to pay restitution payments in an amount to be determined at a later date.

The attorney general requested $102,989.95 in restitution, comprised of $101,220 in excess billing fees and $2768.55 in improper mileage expenses, less the $998.60 that Meyer previously paid the SPD. Meyer agreed to the attorney general's requested restitution provided that the SPD filed a partial satisfaction for $53,808.82—the approved amount of her pending, postaudit services that she provided under her contract "other than for the events giving rise to this criminal prosecution." In accordance with this agreement, the district court ordered Meyer to pay the full restitution amount of $102,989.95, and the SPD filed a partial satisfaction in the amount of $53,808.82. Meyer then entered into a payment plan requiring $250 each month until she paid the remaining $49,181.13 in full.

**C. The Disciplinary Proceedings.** Meyer informed the Board of her third-degree theft *Alford* plea. On May 31, 2019, the Board filed an amended three-count complaint against Meyer, alleging she violated Iowa Rule of Professional Conduct 32:1.5(a) (unreasonable fees or expenses), 32:8.4(b) (commission of a criminal act), and 32:8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation). The Board alleged Meyer (1) collected an unreasonable fee for billing the SPD for services she did not provide; (2) collected an unreasonable amount for expenses billed to SPD for miles she did not travel; (3) committed a criminal act, theft by deception, that reflected adversely on her honesty, trustworthiness, or fitness as a lawyer; and (4) engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation by billing SPD for fees she did not earn and

expenses she did not incur. According to the Board, the conduct at issue was established by Meyer's *Alford* plea to third-degree theft. Meyer answered, admitting most of the allegations in the complaint, including the preclusive effects of her *Alford* plea. Pursuant to Iowa Court Rule 36.17(4)(*c*), the Board provided Meyer with notice of its intent to invoke issue preclusion "with regard to all matters resolved in a criminal proceeding in the Iowa District Court for Polk County . . ., which resulted in a finding of guilt."

**D. The Commission Hearing and Recommendation.** The commission held a multiday hearing beginning May 30. The Board's case focused on three events: the SPD's internal investigation of Meyer's billings, the state auditor's special investigation that included Meyer's billings, and the criminal case against Meyer that resulted in her *Alford* plea to third-degree theft. Meyer consistently argued that "[s]he did the work, she billed for the work, [and] she was entitled to be paid for the work." She acknowledged there were billing irregularities, which she attributed to the way she and her staff billed the SPD. Meyer never denied her responsibility for the billing irregularities.

On November 7, the commission determined Meyer's *Alford* plea demonstrated she violated rules 32:1.5(a), 32:8.4(b), and 32:8.4(c), finding she "engaged in a criminal act that reflects adversely on her honesty or trustworthiness[] and also engaged in conduct that involves dishonesty or deceit." The commission found the Board failed to prove that Meyer billed for time not actually worked beyond the $1000 established by her *Alford* plea. Accordingly, the commission determined a sixty-day suspension was appropriate.

## II.  Standard of Review.

We review attorney disciplinary proceedings de novo.  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 171 (Iowa 2013).  The Board must prove the rule violation by a convincing preponderance of the evidence.  *Mathahs*, 918 N.W.2d at 489.  A convincing preponderance of the evidence is more demanding than the civil preponderance-of-the-evidence standard but less demanding than the criminal beyond-a-reasonable-doubt standard.  *See Moran*, 919 N.W.2d at 758.  We respectfully consider the commission's findings, but we are not bound by them.  *Noel*, 923 N.W.2d at 582.  "Upon proof of misconduct, we may impose a greater or lesser sanction than the sanction recommended by the commission."  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bauermeister*, 927 N.W.2d 170, 173 (Iowa 2019) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 764 (Iowa 2010)).

## III.  Ethical Violations.

**A.  Prohibition Against Unreasonable Fees—Rule 32:1.5(a).**  This rule provides, "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses, or violate any restrictions imposed by law."  Iowa R. Prof'l Conduct 32:1.5(a).  We have said that the fees under rule 32:1.5(a) "must be 'reasonable under the circumstances.'"  *Noel*, 923 N.W.2d at 585 (quoting Iowa R. Prof'l Conduct 32:1.5(a) cmt. [1]).

We give preclusive effect to Meyer's *Alford* plea to third-degree theft by deception in the amount of $1000.  *See Emp'rs Mut. Cas. Co. v. Van Haaften*, 815 N.W.2d 17, 28 (Iowa 2012) (holding the preclusive effect of an *Alford* plea is limited to the elements of the offense, including the upper limit on the dollar value).  Based on issue preclusion, the commission found Meyer violated rule 32:1.5(a) by charging an excessive

$1000. The commission, however, found the Board otherwise failed to prove Meyer billed for work she did not perform and declined to consider the six-figure criminal restitution judgment in calculating the amount Meyer overcharged the SPD. We do not give the restitution award preclusive effect here. Yet the fact that Meyer *agreed* to reimburse the SPD $102,989.95 in the criminal proceeding undermines her claim in this disciplinary proceeding that she overcharged the SPD by much less. We need not determine the exact amount Meyer overcharged the SPD, but we agree with the Board that the amount far exceeds the $1000 ceiling for third-degree theft.

The state auditor discovered Meyer billed more than twenty-four hours in a day on thirty different days. On thirty-eight different days, the state auditor found Meyer billed between twenty and 23.9 hours per day. In one month, July 2009, Meyer billed the SPD for 353.8 hours. That would require Meyer to bill an average of eleven hours daily for thirty-one straight days, an accomplishment Langholz aptly described as "highly improbabl[e] for an individual to bill in a single month." We agree.

Meyer testified she often worked beyond customary hours and during weekends and blamed her office's billing practices for inaccurately entering the dates of work actually performed, thereby artificially inflating the number of hours in multiple cases piled onto the same day. "[S]loppy billing practices" do not excuse violations of rule 32:1.5(a). *Noel*, 923 N.W.2d at 586. And Langholz credibly noted Meyer's pattern of billing did not justify the high billing days. He determined the days surrounding the high billing days were not as low as he expected, and when viewed in weekly, monthly, or yearly blocks of time, he did not believe the billable hours were legitimate. For example, in fiscal year 2010, Meyer claimed more than $160,000 in fees, or more than 2660 billable hours.

In addition, Meyer acknowledged that she overbilled the SPD for mileage expenses and indeed reimbursed the SPD $998.60 for excessive expenses billed. The state auditor's report identified 147 trips in which Meyer duplicated her mileage reimbursement, totaling $2768.55 for 7910 miles traveled. Her excessive mileage reimbursement alone violates rule 32:1.5(a)'s prohibition against charging unreasonable expenses. *See id.*

We determine that the Board proved by a convincing preponderance of the evidence that Meyer violated rule 32:1.5(a).

**B. Conduct Reflecting Adversely on the Attorney's Fitness to Practice Law—Rule 32:8.4(b).** Rule 32:8.4(b) states, "It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Iowa R. Prof'l Conduct 32:8.4(b). Again applying issue preclusion, we find Meyer's *Alford* plea establishes she committed a criminal act. Not every criminal act reflects adversely on the attorney's fitness to practice law. *See Templeton,* 784 N.W.2d at 767. "There must be some rational connection other than the criminality of the act between the conduct and the actor's fitness to practice law." *Noel*, 923 N.W.2d at 587 (quoting *Templeton*, 784 N.W.2d at 767). We consider the attorney's mental state, the disrespect the act demonstrates for the law or law enforcement, the presence or absence of a victim and the actual or potential injury, and the existence of a pattern of criminal conduct. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Sears*, 933 N.W.2d 214, 220 (Iowa 2019).

In *Noel*, we found that the misconduct of an SPD-contracted attorney, who repeatedly billed for services he did not provide while representing indigent clients, was "directly connected to his fitness to practice law." 923 N.W.2d at 587. We reiterated "an attorney's conduct

'that diminishes "public confidence in the legal profession" ' is 'conduct that reflects adversely on a lawyer's fitness to practice law.' " *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wheeler*, 824 N.W.2d 505, 510–11 (Iowa 2012)). We reach the same conclusion as to Meyer's criminal act.

We find Meyer's conduct diminishes public confidence in the legal system. Meyer disregarded her responsibility to avoid submitting billing errors to the SPD for indigent defense work. *See id.* We agree with the commission's finding that Meyer violated rule 32:8.4(b).

**C. Conduct Involving Dishonesty, Fraud, Deceit, or Misrepresentation—Rule 32:8.4(c).** Rule 32:8.4(c) provides, "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). To show a violation of rule 32:8.4(c), the Board must prove "the attorney acted with 'some level of scienter' rather than mere negligence." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Green*, 888 N.W.2d 398, 403–04 (Iowa 2016) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Haskovec*, 869 N.W.2d 554, 560 (Iowa 2015)); *see Rhinehart*, 827 N.W.2d at 182 (holding the Board did not prove a violation of rule 3:8.4(c) because "there [was] no evidence that [the attorney] was dishonest, deceitful, or that he committed fraud or made any misrepresentation"). "The dispositive question 'is whether the effect of the lawyer's conduct is to mislead rather than to inform.' " *Noel*, 923 N.W.2d at 588 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Suarez-Quilty*, 912 N.W.2d 150, 158 (Iowa 2018)).

The record must show Meyer "acted knowingly, intentionally, or with the aim to mislead." *Id.* (quoting *Suarez-Quilty*, 912 N.W.2d at 158). In *Wheeler*, we found an attorney engaged in conduct involving misrepresentation because he pled guilty to knowingly making a false

statement to a financial institution. 824 N.W.2d at 511. Here, Meyer entered an *Alford* plea to third-degree theft. Meyer's "guilty plea, notwithstanding its *Alford* character, precludes [her] from contending that [she is] not guilty of that offense." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Engelhardt*, 630 N.W.2d 810, 814 (Iowa 2001). "A person commits theft when the person . . . [o]btains the labor or services of another, or a transfer of possession, control, or ownership of property of another, or the beneficial use of property of another, by deception." Iowa Code § 714.1(3). The relevant definition of "[d]eception" means knowingly "[c]reating or confirming another's belief or impression as to the existence or nonexistence of a fact or condition which is false and which the actor does not believe to be true." *Id.* § 702.9(1). By pleading guilty to theft by deception, Meyer acknowledged that when she submitted her billings and reimbursements, she "acted knowingly, intentionally, or with the aim to mislead." *Suarez-Quilty*, 912 N.W.2d at 158 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Guthrie*, 901 N.W.2d 493, 498 (Iowa 2017)).

We agree with the commission that Meyer violated rule 32:8.4(c).

**IV. Sanction.**

Meyer argues a thirty-day suspension of her license is sufficient, while the Board seeks a one-year suspension. The commission recommended a sixty-day suspension. To calibrate the appropriate sanction, we consider

> the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 441 (Iowa 2012) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761

N.W.2d 53, 61 (Iowa 2009) (per curiam)). Prior cases are instructive, *see Mathahs*, 918 N.W.2d at 494, but we "rarely encounter cases [with] the exact same conduct," *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 464 (Iowa 2014).

Last term, we suspended two lawyers who overcharged the SPD. We imposed a sixty-day suspension in *Mathahs*, 918 N.W.2d at 500, and a one-year suspension in *Noel*, 923 N.W.2d at 591. "Generally, our sanctions for attorneys who charge and collect unreasonable fees range from sixty days to two years." *Id.* at 588–89 (collecting cases). In our view, Meyer's misconduct is comparable to Noel's and worse than Mathahs's.

In *Mathahs*, the attorney billed the SPD for excessive hours and mileage, violating rules 32:1.5(a) (unreasonable fees) and 32:5.3(b) (failure to supervise staff). 918 N.W.2d at 489–91. But the Board stipulated Mathahs did not violate rules 32:8.4(b) and (c), and we found no misrepresentation or deception. *Id.* at 497. We noted the attorney general's investigation closed without any criminal charges. *Id.* The attorney general found Mathahs's hours "were high but believable" and "could not locate any billings for events or work that did not actually occur," while also concluding "the billing errors appeared much more like accidental and less like intentional theft." *Id.* Unlike Mathahs, Meyer was convicted of theft by deception and violated rules 32:8.4(b) (criminal act) and (c) (deceit). Meyer's hours were high and unbelievable. That Meyer "received a deferred judgment does not excuse [her] violation of [the] disciplinary rule[s]." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carroll*, 721 N.W.2d 788, 792 (Iowa 2006). A sixty-day suspension is insufficient for Meyer.

In *Noel*, the auditor's investigation "resulted in two criminal convictions for fourth-degree theft, and Noel both admitted to and was

convicted of billing for events that he did not actually attend." 923 N.W.2d at 589. Noel was sentenced to probation for two years, fully suspended jail sentences of thirty days and one year, mandatory minimum fines of $315 each count, and ordered to pay $14,697.45 in restitution. *Id.* at 581. We found "Noel engaged in repeated deception over a period of years." *Id.* at 590. Noel persisted in arguing his misconduct resulted from honest mistakes, which we concluded "evidenc[ed] a lack of an actual appreciation of [his] wrongful conduct." *Id.* at 589 (alteration in original) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Tofflemire*, 689 N.W.2d 83, 93 (Iowa 2004)). Noel admittedly discovered he was overbilling the SPD for mileage yet made no effort to remedy the problem before Langholz informed him his contract was in jeopardy. *Id.* at 590. Noel was a magistrate, such that his misconduct further undermined public confidence in our profession. *Id.* Noel's partial reimbursement and previously unblemished disciplinary record were insufficient to avoid our imposition of a one-year suspension, the sanction recommended by the commission. *Id.* at 590–91.

The commission recommended a sixty-day suspension for Meyer. In our view, the commission underestimated the dollar amount Meyer overcharged the SPD. Her court-ordered restitution, $102,989.95, is larger than Noel's $14,697.45, and she pled guilty to a more serious theft offense. But mitigating factors cut against imposing a longer suspension on Meyer than Noel. The SPD never questioned the quality of Meyer's representation of her clients or claimed any of her clients were harmed. To the contrary, a retired district court judge stated in an affidavit that Meyer was "always extremely well-prepared, on time[,] and a superior professional, caring advocate for the children she represented." He noted foster care support groups had urged him to continue appointing Meyer

as guardian ad litem for children because of her diligence, responsiveness, and "that she always went above and beyond what other guardians ad litem did to help the children she served." A district associate judge also submitted an affidavit stating that Meyer was her "first choice when appointing counsel" in juvenile court matters and described her as a "superb advocate." We consider their testimony in mitigation. *See Noel*, 923 N.W.2d at 590.

Another mitigating factor is that aside from a private admonition, Meyer has never previously been subject to professional discipline. *Id.* at 591 (considering an unblemished disciplinary record in mitigation). Yet another mitigating factor is that Meyer has volunteered for pro bono cases at the Iowa Veterans Home in Marshalltown and through the Polk County and Iowa Legal Aid Volunteer Lawyer Projects. *See Mathahs*, 918 N.W.2d at 498–99 (considering pro bono work in mitigation). Finally, we consider Meyer's partial payments and stipulation to pay the full remaining amount of restitution ordered to make the SPD whole through monthly payments. *See id.* at 499 (considering voluntary restitution and repayments in mitigation). Meyer has already reimbursed the SPD over $53,000 and is making monthly payments on the net amount due.

On balance, we determine that a one-year suspension is appropriate in this case.

### V. Disposition.

We suspend Meyer's license to practice law in this state with no possibility of reinstatement for one year. The suspension applies to all facets of the practice of law, as provided in Iowa Court Rule 34.23(3), and requires notification to clients, as provided by Iowa Court Rule 34.24. The costs of this proceeding are assessed against Meyer pursuant to Iowa Court Rule 36.24(1). To establish her eligibility for reinstatement, Meyer

must file an application pursuant to Iowa Court Rule 34.25 and must show she has continued making the stipulated monthly payments in restitution. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Taylor,* 887 N.W.2d 369, 383 (Iowa 2016) (requiring the attorney to "demonstrate she has made every payment to federal and state tax authorities required of her under the terms of any payment plans in effect" to establish eligibility for reinstatement).

**LICENSE SUSPENDED.**