# IN THE SUPREME COURT OF IOWA

No. 18–1229

Filed February 15, 2019

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**MATTHEW L. NOEL,**

Respondent.

___

On review of the report of the Iowa Supreme Court Grievance Commission.

The grievance commission recommends we suspend an attorney's license for an indefinite period of at least one year based on the attorney's conduct of charging and collecting excessive fees, conduct reflecting adversely on his fitness to practice law, and conduct involving deceit. **LICENSE SUSPENDED.**

Tara van Brederode and Wendell J. Harms, Des Moines, for complainant.

Max E. Kirk, Waterloo, and Dan McClean of McClean & Heavens Law Office, Dyersville, for respondent.

**CHRISTENSEN, Justice.**

An audit by the Iowa State Public Defender (SPD) revealed an Iowa attorney billed the state for services he did not perform and made excessive mileage claims. The attorney pled guilty to two counts of fourth-degree theft for billing for family team meetings he did not attend. The Iowa Supreme Court Attorney Disciplinary Board (Board) subsequently brought a complaint against the attorney alleging he violated numerous Iowa Rules of Professional Conduct while performing legal services for the SPD. The Iowa Supreme Court Grievance Commission (commission) found various violations of our ethical rules and recommended suspending the attorney's license to practice law in Iowa indefinitely for a period of at least one year from the date of our holding in this matter.

The attorney challenges the commission's recommended sanction and requests a ninety-day suspension instead. Further, he argues the commission should not have relied on the doctrine of issue preclusion in determining he committed a criminal act based on his criminal convictions, nor should it have admitted the minutes of testimony from his criminal theft case as evidence. The attorney also maintains the commission made incorrect factual findings and erroneously concluded he violated certain ethical rules. After our de novo review of the record, we agree with the recommendation of the commission and suspend the attorney's license to practice law in the State of Iowa indefinitely for a period of at least one year.

## I. Background Facts and Proceedings.

Matthew Noel is an attorney admitted to the Iowa bar in 2008. In November 2008, Noel and the SPD entered into a contract for Noel to provide legal services to indigent adults and juveniles in five judicial districts and in appellate matters. At the time of the alleged conduct, Noel

maintained a law office in Dubuque County. He was appointed as a magistrate in Dubuque County in August 2013. Noel's contract with the SPD was renewed in 2010, and the renewed contract expired on January 1, 2014. The terms and conditions of the contract provided that Noel "shall claim fees only for actual time and expenses reasonably necessary to properly represent the client." Pursuant to the contract, Noel was required to submit a claim form to the SPD to receive payment for his services. The contract required him to submit the following or similar language:

> I, the undersigned attorney, certify that I have completed my services under the appointment; that I have not received nor have I entered into any agreement to receive compensation for these services, direct or indirect, from any source other than the State Public Defender; and that the above information summarizes the services and expenses for which I am entitled to payment. I further state that an itemized statement of services and expenses is attached hereto and a copy has been provided to my client.

In a letter dated December 23, 2013, Samuel Langholz of the SPD informed Noel the SPD had concerns about Noel's billing practices related to his claims for mileage expenses. Langholz explained Noel had been reimbursed nearly $15,000 for traveling more than 40,000 miles in each of the past two fiscal years, "[a]nd in each of these years, [Noel] claimed and [was] paid more mileage than any other indigent defense contract attorney in the state." Due to billing concerns, Langholz stated the SPD was "not comfortable renewing [Noel's] contract for a full three-year term" and would only agree to a renewal of its contract with Noel for one month "on the condition that several more distant counties [were] removed from [the] contract."

Noel responded to Langholz and the SPD in a letter dated January 14, 2014, admitting he billed the SPD full trip mileage for each client, even when he made the trip on behalf of multiple clients. Noel claimed he did

not learn he was incorrectly billing the mileage until he attended a SPD conference in June 2013. Noel gave two reasons for his incorrect billing. First, he told Langholz that he was an electrician prior to becoming a lawyer and the industry standard for electricians was "to charge all customers mileage for a trip to a single location on one day." Second, he was continuing the billing practice he was taught by his previous law firm's office manager and other attorneys. In a letter dated January 29, Langholz told Noel he had considered Noel's January 14 response and determined the SPD would not continue to contract with Noel to provide indigent defense services. Langholz explained Noel's billing for mileage had resulted in more than $11,000 of potential overpayments and Noel never contacted the SPD to remedy his billing issues after he claimed he learned he had been incorrectly billing his mileage.

In September 2014, the state auditor (auditor) issued her report on a special investigation of the SPD's office that spanned from July 2009 through August 2013. The auditor's report found the SPD overpaid Noel at least $5070 for legal services, including $2364 for family team meetings in juvenile cases Noel did not attend. The auditor's report also found the SPD overpaid Noel at least $12,333.45 in mileage expenses, which represented payment for more than 35,328 miles at thirty-five cents per mile. The state subsequently filed a trial information against Noel, charging him with second-degree theft, a class "D" felony, in violation of Iowa Code sections 714.1(3), 714.2(2), and 714.3 (2013). The state later amended the trial information to charge Noel instead with two counts of fourth-degree theft, serious misdemeanors, in violation of Iowa Code sections 714.1(3), 714.2(4), and 714.3. The charges alleged Noel obtained "a transfer of possession, control, or ownership of the property of another by deception, where the amount of money involved exceeds $200, by billing

the State Public Defender's Office for work not actually performed" from July 2009 through August 2013.

Noel filed a written guilty plea to the two counts of fourth-degree theft on June 22, 2017. In this plea, Noel proclaimed,

> In order to establish a factual basis I ask the court to accept as true the minutes of testimony, the date[] of the offense is July 2009 through August 2013 and I admit that I did the following: The Defendant admits that there is a factual basis for both Count I and Count II related to billings for Family Team Meetings. Defendant does not contest paying restitution for allegations of over billing mil[e]age.

The district court accepted Noel's guilty plea, and he was sentenced to a mandatory minimum fine of $315 on each count; a $125 law enforcement initiative surcharge on each count; the applicable surcharges and court costs on each count; and restitution in the amount of $14,697.45— $12,333.45 for Noel's mileage claims and $2364 for his fee claims for family team meetings he did not attend. Noel also received a thirty-day fully suspended jail sentence on count I and unsupervised probation to be served concurrently with a one-year fully suspended jail sentence and unsupervised probation on count II. Noel did not appeal this judgment.

On October 30, the Board filed a complaint against Noel, alleging numerous violations of the Iowa Rules of Professional Conduct. On January 26, 2018, the Board filed a motion for leave to substitute an amended complaint, which the commission approved, and the amended complaint was filed on March 5, separating the matter into two counts. Count I alleged Noel violated Iowa Rules of Professional Conduct 32:1.5(a) (unreasonable fees or expenses), 32:8.4(b) (criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects"), and 32:8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation") in his billings for family team meetings he

did not attend. Count II alleged Noel violated the same three rules in his billings to the SPD for mileage claims. On March 5, the Board filed a notice of issue preclusion pursuant to Iowa Court Rule 36.17(4), stating it intended to invoke issue preclusion regarding all matters resolved in Noel's criminal proceedings for his fourth-degree theft convictions.

The Board held a hearing to present evidence on March 27 and March 28. The Board presented nineteen exhibits at the hearing. Noel objected to exhibit 2, which contained the confidential minutes of testimony in Noel's criminal theft case, and exhibit 5, which contained additional minutes of testimony in Noel's criminal theft case. The commission admitted exhibits 2 and 5 after listening to arguments on the objections. Additionally, Noel presented twenty-two exhibits of his own. Pursuant to rule 36.17(2), Noel also submitted affidavits from an Iowa district court judge and an Iowa district associate judge in lieu of character testimony.

On July 18, the commission issued its findings and recommendation. In its factual findings, the commission declared,

> 34. The *issue* of Noel's conduct raised in Count I of the Board's Complaint as to the billings for Family Team Meetings is *identical* to the issue raised in his criminal case. The mileage reimbursement was not at issue in the criminal proceeding, although the Court ordered restitution for the mileage reimbursement as part of the criminal proceeding. . . .

> 35. The issue of Noel's conduct as to his billings for Family Team Meetings was *material and relevant* to the disposition of the criminal case. . . .

> 36. The *determination* of the issue of Noel's conduct in the criminal case as to his billings for Family Team Meetings was *necessary and essential* to the resulting judgment. Noel accepted responsibility for his actions and admitted he was overpaid for billing Family Team Meetings he did not attend. . . .

37. In the criminal case, Noel was afforded a *full and fair opportunity* to litigate the issue of his conduct as to his billings for Family Team Meetings. . . .

38. There is a *rational connection* between the criminality of Noel's conduct as to his billings for Family Team Meetings and his fitness to practice law. . . .

(Emphasis added.) The commission found Noel violated rule 32:1.5(a) by claiming duplicate mileage and fees for family team meetings he did not attend, rule 32:8.4(b) for billing the SPD for family team meetings he did not attend and his criminal convictions for this billing, and rule 32:8.4(c) for intentionally making dishonest statements about his mileage and billing practices. The commission recommended we suspend Noel's license for an indefinite period with no possibility of reinstatement for at least one year from the date of our decision in this matter.

Upon our review, Noel requests a ninety-day suspension and maintains the commission's recommended one-year suspension is inconsistent with the sanctions imposed in similar cases. Additionally, Noel contends the commission should not have relied on the doctrine of issue preclusion to determine he committed a criminal act based on his guilty plea to two counts of fourth-degree theft. He also argues the commission should not have admitted the minutes of testimony from his criminal theft case as evidence in his disciplinary hearing. Further, Noel challenges certain factual findings and the commission's conclusion that he violated certain Iowa Rules of Professional Conduct.

## II.  Standard of Review.

Our court reviews attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nine*, 920 N.W.2d 825, 827 (Iowa 2018). The Board must prove the alleged attorney misconduct by a convincing preponderance of the evidence, which "is more demanding than proof by [a] preponderance of the evidence, but less demanding than proof

beyond a reasonable doubt." *Id.* at 827–28 (alteration in original) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 884 N.W.2d 772, 777 (Iowa 2016)). Though we are not bound by the commission's factual findings and recommendations, we respectfully consider them. *Id.* at 827. Ultimately, we have the discretion to "impose a greater or lesser sanction than what the commission has recommended upon proof of an ethical violation." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Mathahs*, 918 N.W.2d 487, 489 (Iowa 2018).

### III. Analysis.

**A. Issue Preclusion.** Noel contends the commission erred in relying upon the doctrine of issue preclusion in count I regarding Noel's alleged violation of Iowa Rule of Professional Conduct 32:1.5(a) in his billings for family team meetings he did not attend. Noel claims he pled guilty to the fourth-degree theft charges in order to avoid facing "a felony count with a factual basis that his inadequate records could not rebut." However, he maintains his convictions of fourth-degree theft in violation of Iowa Code section 714.1(3) do not constitute proof of his criminal intent, and "at best the actions in inaccurate billing of family team meetings constitute sloppiness and negligence and is not evidence of a crime of intent."

Iowa's grievance commission rules of procedure allow either party in an attorney disciplinary proceeding to invoke principles of issue preclusion if the following three conditions are met:

> *a.* The issue has been resolved in a civil proceeding that resulted in a final judgment or in a criminal proceeding that resulted in a finding of guilt, even if the disciplinary board was not a party to the prior proceeding.
>
> *b.* The burden of proof in the prior proceeding was greater than a preponderance of the evidence.

*c.* The party seeking preclusive effect has given written notice to the opposing party, not less than 10 days prior to the hearing, of the party's intention to invoke issue preclusion.

Iowa Ct. R. 36.17(4); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 177 (Iowa 2013). Additionally, we recognize the following additional requirements when the Board invokes issue preclusion offensively:

(1) the issues . . . sought to be precluded in the . . . disciplinary [proceeding] are identical to the issues . . . in the prior . . . action;

(2) the issues . . . were raised and litigated in the prior . . . action;

(3) the issues . . . were material and relevant to the disposition of the prior . . . action; and

(4) the . . . determination of the . . . issues [in the prior action] [was] necessary and essential to the resulting judgment. . . .

*Rhinehart*, 827 N.W.2d at 178 (alterations in original) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D.J.I.*, 545 N.W.2d 866, 875 (Iowa 1996)). Upon our review of the issue preclusion requirements, we hold the commission correctly applied the doctrine of issue preclusion.

All three conditions of rule 36.17(4) governing the application of issue preclusion are satisfied here. First, Noel pled guilty to two charges of fourth-degree theft, serious misdemeanors, in connection with his practice of billing the SPD for family team meetings in juvenile cases he did not attend. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Iversen*, 723 N.W.2d 806, 809 (Iowa 2006) (holding first condition of issue preclusion met because the attorney pled guilty to the crimes at issue in his disciplinary case). In his guilty plea, Noel admitted "that there is a factual basis for both Count I and Count II related to billings for Family Team Meetings." Second, the burden of proof for fourth-degree theft—beyond a

reasonable doubt—is greater than a mere preponderance of the evidence. Third, the Board provided written notice of its intent to invoke issue preclusion more than twenty days prior to the hearing.

Moreover, the Board satisfied all four requirements to invoke issue preclusion offensively. The issue of Noel's conduct as to his billings for family team meetings in his disciplinary proceeding is identical to his criminal proceeding, which provided Noel with a full and fair opportunity to litigate the issue in his criminal case. *See Emp'rs Mut. Cas. Co. v. Van Haaften*, 815 N.W.2d 17, 23–24 (Iowa 2012) (finding that in the context of an *Alford* plea, the factual basis determination meets the requirement that the issues have been litigated). This family team meeting billing issue was material and essential to the resulting judgment in Noel's criminal case since it served as the factual basis of his guilty plea. We see no additional circumstances that would justify relitigating Noel's practice of billing for family team meetings he did not attend. Noel acknowledged as much in his answer to the amended and substituted grievance complaint, where he admitted that no circumstances existed to relitigate this issue as a criminal proceeding. Consequently, we give preclusive effect to Noel's convictions for fourth-degree theft regarding his billings for family team meetings he did not attend. Noel "is not entitled to another bite at the apple through relitigation of the same issue in this disciplinary proceeding." *Rhinehart*, 827 N.W.2d at 179.

**B. Evidentiary Issues.** Noel argues the commission should not have admitted the minutes of testimony from Noel's criminal case as evidence in his disciplinary proceeding. These minutes of testimony were contained in two exhibits, both of which Noel objected to at the hearing before the commission. In admitting the minutes of testimony into the record, the commission president referred to Iowa Rule of Evidence

5.801(*b*)(2)(b), a rule number that does not exist in the Iowa Rules of Evidence. The Board contends this mistake is a scrivener's error by the court reporter in trying to distinguish between the pronunciation of the letters "b" and "d," and the rule actually referenced was Iowa Rule of Evidence 5.801(*d*)(2)(B). Noel claims the challenged exhibits do not come within any hearsay exception under the Iowa Rules of Evidence.

Rule 5.801(*d*)(2)(B) provides a statement is not hearsay if "[t]he statement is offered against an opposing party and . . . [i]s one the party manifested that it adopted or believed to be true." Iowa R. Evid. 5.801(*d*)(2)(B). The minutes of testimony in both of the challenged exhibits meet this definition. Noel manifested his belief that the statements offered against him in the minutes of testimony were true in his guilty plea, declaring, "I ask the court to accept as true the minutes of testimony . . . ." By signing the guilty plea, Noel acknowledged the "statements therein are true and correct." Thus, contrary to Noel's argument that "[n]othing in the minutes of testimony, Exhibit 2 or Exhibit 5, can be seen as a statement which [Noel] somehow adopted as his own for purposes of a criminal plea," Noel's explicit request for the court to accept the minutes is a clear statement of assent to the minutes of testimony. *See State v. Menke*, 227 N.W.2d 184, 188 (Iowa 1975) ("[I]t must be shown a person clearly and unambiguously assented to the statements of another before an adoptive admission comes into being."). Further, Noel did not deny the accuracy of any portion of the minutes of testimony, nor is there evidence showing the facts contained in the minutes of testimony are invalid. *See State v. Black*, 324 N.W.2d 313, 316 (Iowa 1982) ("The sentencing court should only consider those facts contained in the minutes that are admitted to or otherwise established as true.").

While Noel correctly points out the minutes contained in exhibit 2 pertained to the felony charge that the state later dismissed against him, this charge was dismissed in exchange for Noel's guilty plea to the two counts of fourth-degree theft. "A court may not consider an unproven or prosecuted offense when sentencing a defendant unless (1) the facts before the court show the accused committed the offense, or (2) the defendant admits it." *State v. Gonzalez*, 582 N.W.2d 515, 516 (Iowa 1998). Noel admitted to his conduct in billing for family team meetings he did not attend and incorrectly billing mileage. The challenged minutes of testimony relate to this admitted conduct. Noel also admits in his brief that a factual basis existed for the felony count, stating, "Rather than face a felony count with a factual basis that his inadequate records could not rebut, [Noel] pled guilty to two serious misdemeanors and paid a fine which in total is less than $1,000."

Finally, we reject Noel's claim that the admission of the minutes of testimony was erroneous due to discrepancies in the filing date of the minutes contained in exhibit 5. Noel argues his guilty plea was e-filed before the minutes of testimony contained in exhibit 5, so he could not have adopted these minutes. The state e-filed exhibit 5 on June 19, 2017, at 5:03 p.m. with the clerk of the district court while Noel e-filed his guilty plea to the fourth-degree theft charges on June 22, 2017, at 2:00 p.m. Though exhibit 5 does have a certificate of authenticity dated November 2, 2017, the record is clear Noel only filed his guilty plea asking the court to accept the minutes of testimony as true after the state had filed the minutes of testimony contained in exhibit 5. Therefore, the commission properly admitted exhibit 2 and exhibit 5.

### C. Ethical Violations.

1. *Prohibition against unreasonable fees—rule 32:1.5(a).* Noel contends he did not knowingly violate Iowa Rule of Professional Responsibility 32:1.5(a). Rule 32:1.5(a) states, "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses, or violate any restrictions imposed by law." Iowa R. Prof'l Conduct 32:1.5(a). The rule provides a nonexclusive set of factors to determine whether a fee is reasonable, which includes

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

> (3) the fee customarily charged in the locality for similar legal services;

> (4) the amount involved and the results obtained;

> (5) the time limitations imposed by the client or by the circumstances;

> (6) the nature and length of the professional relationship with the client;

> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

> (8) whether the fee is fixed or contingent.

*Id.* Additionally, the fees must be "reasonable under the circumstances." *Id.* cmt. [1]. Nothing in the rule requires the attorney to "knowingly" violate the rule in order for a violation to occur.

Based on the circumstances in this case, we agree with the commission's conclusion that Noel violated rule 32:1.5(a) by seeking fees for family team meetings he did not attend. The evidence in the auditor's report found Noel claimed $2364 in fees for family team meetings in

juvenile cases he did not attend. Noel did not dispute his practice of billing for family team meetings he did not attend, as he chose to plead guilty to two counts of fourth-degree theft based on this conduct. The secretary at Noel's previous law firm planned to testify that "[s]he occasionally deleted Family Team meeting that [Noel] had entered onto his bills, because his calendar did not show that he attended [them]." When the SPD audit was released, Noel told the secretary, "I fucked up."

The district court ordered Noel to pay restitution fees totaling $2364 despite Noel's claim in this matter that his fees were not excessive because he only pled guilty to the theft of $400.[1] The evidence supports the Board's assertion that Noel claimed more than $400 worth of fees for family team meetings he did not attend. Noel's contract with the SPD informed him that he would "be paid for legal services performed . . . and [that he should] claim fees only for actual time and expenses reasonably necessary to properly represent the client," yet he billed for services he admittedly did not perform. A fee charged for services not provided is not reasonable, even if Noel charged for these services only due to sloppy billing practices as he claims.

Additionally, we agree with the commission that Noel violated rule 32:1.5(a) by making false mileage claims. The evidence demonstrates Noel's mileage expense claims far exceed what he could reasonably claim. In his December 23, 2013 letter, Langholz wrote,

> You consistently billed multiple clients for the full mileage to the same location on the same day. And on some of these days you also billed mileage to other locations as well, often billing what appears to be full roundtrip travel to each location even though it would seem likely that you took a single trip

---

[1]Although Noel only pled guilty to excessive fees regarding the family team meetings, he agreed to pay all restitution. His guilty plea specifically stated, "Defendant does not contest paying restitution for allegations for over billing mileage."

with stops in each location. For example, on January 5, 2012, you claimed mileage totaling 994 miles and were reimbursed a total of $347.90 on seven separate cases, apparently claiming five roundtrips from Dubuque to Clinton and two roundtrips from Maquoketa to Clinton. You billed more than five hundred miles (which would take more than eight hours to travel at 60 mph average speed) on nineteen days. You once billed the same client twice for mileage on the same day in two different claims. And on thirty days, you billed four or more roundtrips to the same county on the same day. In total, you claimed mileage expense for two or more round-trips to the same county on the same day on 145 separate days, resulting in more than $11,000 of potential overpayments.

The auditor's report revealed the SPD overpaid Noel for at least $12,333.45 in mileage expenses, which represented payment for more than 35,328 miles at thirty-five cents per mile. Approximately twenty percent of Noel's total payments from the SPD each year of his contract came from his mileage claims.

Despite Noel's claims that he was mistaken about how to properly bill for mileage due to his past billing practices as an electrician and the way his previous law firm incorrectly taught him to bill mileage, the minutes of testimony contradict his claim. In the minutes of testimony, the general manager for Noel's former employer during his time as an electrician planned to testify "that their electricians do not get involved in billing mileage for work done." He further planned to testify that "mileage would be divided up among the customers so that each paid their proportion of only the actual miles traveled" if an electrician drove to another city to do work for multiple customers, and that "he was not aware of any industry-wide standard that would allow more miles to be billed than were actually traveled." Another electrician also planned to testify to the same information. Moreover, an attorney in Noel's previous law firm planned to testify that Noel called him after the SPD terminated his

contract due to billing problems and told the attorney, "I fucked up," "I'm going to prison," and "my children are not going to have a father."

Noel ultimately admitted to incorrectly billing for his mileage and claimed he did not learn he was incorrectly calculating it until June 2013. Nevertheless, Noel did not contact the SPD to alert them to the problem or attempt to remedy the overpayment until approximately six months later when Langholz notified him of the SPD's concerns regarding his billing. While Noel had a reasonable claim to receive compensation for the mileage he incurred in his work-related travels, "he did not have a reasonable claim to receive compensation multiple times for the expenses incurred for the same trip." *Mathahs*, 918 N.W.2d at 493. Based on the record, the Board proved by a convincing preponderance of the evidence that Noel violated rule 32:1.5(a) by claiming family team meeting fees and mileage he did not incur.

2. *Conduct reflecting adversely on the attorney's fitness to practice law—rule 32:8.4(b).* Noel challenges the commission's finding that his actions violated Iowa Rule of Professional Conduct 32:8.4(b). Rule 32:8.4(b) provides, "It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects[.]" Iowa R. Prof'l Conduct 32:8.4(b). "Illegal conduct can reflect adversely on fitness to practice law. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation." *Id.* cmt. [2]. Nevertheless, "[t]he mere commission of a criminal act does not necessarily reflect adversely on the fitness of an attorney to practice law." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 767 (Iowa 2010). "There must be some rational connection other than the criminality of the act between the

conduct and the actor's fitness to practice law." *Id.* (quoting *In re Conduct of White*, 815 P.2d 1257, 1265 (Or. 1991) (en banc)). For example, we previously found an attorney violated rule 32:8.4(b) after he pled guilty to making a false statement to a financial institution on a mortgage application because his dishonest behavior reflected adversely on his fitness to practice law. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wheeler*, 824 N.W.2d 505, 510–11 (Iowa 2012). In doing so, we stressed an attorney's conduct "that diminishes 'public confidence in the legal profession' " is "conduct that reflects adversely on a lawyer's fitness to practice law." *Id.* at 510.

Here, Noel engaged in illegal conduct through a pattern of repeatedly billing for services he did not provide during his time representing indigent clients on behalf of the SPD. This misconduct is directly connected to his fitness to practice law. By charging for services he did not provide, especially during his time as a magistrate, Noel diminished public confidence in the legal profession and disregarded his responsibility "to avoid billing errors in connection with SPD contract work." *Mathahs*, 918 N.W.2d at 495. Upon our de novo review of the record, we find Noel violated rule 32:8.4(b).

3. *Conduct involving dishonesty, fraud, deceit, or misrepresentation—rule 32:8.4(c).* Noel contends the commission erred in finding he violated Iowa Rule of Professional Conduct 32:8.4(c) because he lacked the requisite scienter. Rule 32:8.4(c) states, "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation[.]" Iowa R. Prof'l Conduct 32:8.4(c). To find a violation of this rule, "we also must find 'a level of scienter that is more than negligent behavior or incompetence.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Suarez-Quilty*, 912 N.W.2d 150, 158 (Iowa 2018)

(quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barry*, 908 N.W.2d 217, 226 (Iowa 2018)). We must find "the attorney acted knowingly, intentionally, or with the aim to mislead." *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Guthrie*, 901 N.W.2d 493, 498 (Iowa 2017)). The dispositive question "is whether the effect of the lawyer's conduct is to mislead rather than to inform." *Id.* (quoting *Barry*, 908 N.W.2d at 226). Noel maintains he never intended to mislead with his improper billing practices, as he was merely "negligent and haphazard in his billing practices."

In *Wheeler*, we found the requisite scienter existed to demonstrate an attorney engaged in conduct that violated rule 32:8.4(c) based solely on the attorney's decision to plead guilty to knowingly making a false statement to a financial institution. *Wheeler*, 824 N.W.2d at 511. Similarly, Noel exhibited the requisite scienter to demonstrate he violated rule 32:8.4(c) through his practice of billing for family team meetings he did not attend when he pled guilty to two counts of fourth-degree theft for these actions. Noel admitted "that on a handful of occasions he submitted bills to the [SPD] for family team meetings with dates or descriptions that he later realized were false." However, he did not take action to remedy his errors, nor did he track his time adequately to provide the SPD with an appropriate record of the meetings he actually did attend. Therefore, we find Noel "acted knowingly, intentionally, or with the aim to mislead" through his billing practices regarding family team meetings, and the Board proved beyond a convincing preponderance of the evidence that Noel violated 32:8.4(c). *Suarez-Quilty*, 912 N.W.2d at 158 (quoting *Guthrie*, 901 N.W.2d at 498).

Likewise, the record demonstrates Noel "acted knowingly, intentionally, or with the aim to mislead" in his claims for mileage he did

not incur. *Id.* After Langholz contacted Noel in January 2014 about the SPD's concerns surrounding Noel's mileage claims, Noel informed Langholz he learned in June 2013 that he had been overbilling the SPD for mileage. Noel also attempted to excuse his actions by claiming he was simply following the electrician industry standard of billing. This claim was rebutted. Despite Noel's knowledge of his incorrect claims for mileage, he never contacted the SPD to remedy this issue and waited until Langholz informed him of the investigation into his practices to inform the SPD about his problems billing mileage. This level of deceit rises above mere negligence or incompetence and speaks to Noel's intention "to mislead rather than to inform." *Id.* Consequently, we find Noel violated rule 32:8.4(c) for claiming excessive mileage, in addition to his violation of rule 32:8.4(b) for billing for family team meetings he did not attend.

**D. Sanction.** Noel maintains a ninety-day suspension of his license to practice law in Iowa is more appropriate, while the Board continues to request a suspension of Noel's license for at least one year. In determining the appropriate sanction for attorney misconduct, we examine "the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and [the attorney's] fitness to continue in the practice of law." *Mathahs*, 918 N.W.2d at 494 (alteration in original) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Laing*, 832 N.W.2d 366, 367–68 (Iowa 2013)). We also evaluate any mitigating and aggravating factors, as well as prior similar cases while keeping in mind "their limited usefulness due to the variations in their facts." *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 62 (Iowa 2009)).

Generally, our sanctions for attorneys who charge and collect unreasonable fees range from sixty days to two years. *Id.* at 495. In

*Mathahs,* we recently suspended an attorney's license for sixty days for violating rule 32:1.5(a) (prohibiting unreasonable fees) by billing the SPD for excessive hours and mileage and rule 32:5.3(b) (requiring attorney reasonably ensure conduct of nonlawyer under attorney's supervision conforms to the professional obligations of a lawyer) by failing to adequately supervise his secretary. *Mathahs,* 918 N.W.2d at 493–94, 496–97. In reaching this sanction, we noted Mathahs fully cooperated with the investigations into his billing practices and the board, acknowledged his responsibility for the errors, and had a record of community service and pro bono work. He also took corrective action by making voluntary restitution and offering to reimburse the SPD for additional funds. *Id.* at 497–99. Additionally, we considered the office of the attorney general's (AG) investigation into Mathahs, which was closed without filing any criminal charges. *Id.* at 497. The AG found Mathahs's billable hours "were high but believable" and "could not locate any billings for events that did not actually occur." *Id.* The AG also concluded "the billing errors appeared much more like accidental and less like intentional theft" due to secretarial issues. *Id.*

In contrast, in *Iowa Supreme Court Board of Professional Ethics & Conduct v. Tofflemire,* we suspended an attorney's license indefinitely with no possibility of reinstatement for two years because the attorney took sick leave from her full-time employment with the Iowa Workforce Development while claiming to perform SPD work and billed substantial hours of work to the SPD that were sometimes in excess of twenty-four hours for a given date. 689 N.W.2d 83, 90–92, 95 (Iowa 2004). In doing so, we considered a number of aggravating factors that led to our sanction. While Tofflemire admitted to sloppy recordkeeping practices and other issues that contributed to her wrongdoing, each of her acknowledgments was

"followed by an excuse, evidencing a lack of an actual appreciation of her wrongful conduct." *Id.* at 93. We were also troubled by Tofflemire's pattern of deception, as she engaged in the same deceitful conduct multiple times, and her evasive conduct before the commission. *Id.* at 92, 94. Ultimately, we decided to increase the commission's recommended suspension of her license for a minimum of thirty days to two years, *id.* at 85, 94, reiterating that "[f]undamental honesty is the base line and mandatory requirement to serve the legal profession," *id.* at 94 (quoting *Comm. on Prof'l Ethics & Conduct v. Bauerle*, 460 N.W.2d 452, 453 (Iowa 1990)).

We find Noel's case is somewhere in between *Mathahs* and *Tofflemire*, though it is more analogous to *Tofflemire*, and we agree with the commission's recommended sanction of an indefinite suspension of Noel's license to practice law for a period of at least one year from the filing date of this opinion. Unlike in *Mathahs*, the auditor's investigation into Noel's misconduct resulted in two criminal convictions for fourth-degree theft, and Noel both admitted to and was convicted of billing for events that he did not actually attend. Despite these convictions, like in *Tofflemire*, Noel continues to maintain any misrepresentations he made in billing for family team meetings and mileage "were the results of honest mistakes." *Id.* at 93. While Noel acknowledged his billing problems, he follows each of his statements with an excuse, "evidencing a lack of an actual appreciation of [his] wrongful conduct." *Id.* These excuses range from a claim that he is the victim of selective prosecution because the commission's recommended sanction is "inconsistent with sanctions imposed upon other individuals who have exhibited similar behavior"[2] to a claim of mere "sloppiness and negligence" in his billing.

_____

[2]Noel does not provide us with any authority to support his argument that the Board must take an all or nothing approach to professional regulation by investigating

Further, Noel engaged in repeated deception over a period of years, resulting in $14,697.45 of overpayment to him from the SPD, and the SPD and Board spent numerous hours analyzing his account for the discrepancies. *See id.* at 94 ("What is troubling here is that instead of an isolated instance of misrepresentation, there was repeated deception."); *see also Mathahs*, 918 N.W.2d at 499 (considering "the nature and extent of the amount of funds that Mathahs improperly collected from the SPD" and the numerous hours spent analyzing his account as aggravating factors). "[A]ttorneys who have engaged in misrepresentation and deceit have received lengthy suspensions because such conduct 'constitutes a grave and serious breach of professional ethics.' " *Tofflemire*, 689 N.W.2d at 93–94 (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stein*, 603 N.W.2d 574, 576 (Iowa 1999)). Although Noel claims he found out in June 2013 that he had been incorrectly overbilling the SPD for his mileage, Noel never contacted the SPD to remedy this problem until after Langholz informed him of the SPD's concerns and its desire to no longer contract with him. "The chronology tends to deflate consideration of remorse and cooperation as mitigating factors." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 467 (Iowa 2014).

When Langholz contacted Noel about the billing issues, Noel had only been practicing for approximately five years. While inexperience is typically a mitigating factor, *see Iowa Supreme Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 155 (Iowa 2018) (discussing inexperience as a mitigating factor), that is not the case in this situation. Noel repeatedly billed for meetings he did not attend and made false mileage claims.

all of the attorneys named in the auditor's report regarding the SPD. In any event, we evaluate each attorney disciplinary case based on the individual circumstances present without consideration to whether other attorneys have been disciplined for similar behavior.

"Lawyers of *any* level of experience would understand that such actions are deplorable." *Id.* (finding inexperience not mitigating factor for repeatedly missing court hearings and making misrepresentations to the court). Additionally, Noel applied for and was appointed as a magistrate in 2013, which further undermines the role inexperience plays as a mitigating factor. As a magistrate, he was tasked with administering the law, yet he violated the law himself and diminished "public confidence in the legal profession" in the process. *Wheeler*, 824 N.W.2d at 510 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Keele*, 795 N.W.2d 507, 512 (Iowa 2011)).

Nevertheless, there are some mitigating factors in this case that warrant a suspension less than Tofflemire's indefinite two-year suspension. Pursuant to his restitution order, Noel has reimbursed the SPD for the duplicate mileage expenses and improper billings. *See Mathahs*, 918 N.W.2d at 499. He also has demonstrated respect within the legal community by submitting affidavits of his character from local judges. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Springer*, 904 N.W.2d 589, 597 (Iowa 2017). Additionally, Noel has since taken measures to implement better recordkeeping and billing practices. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barnhill*, 847 N.W.2d 466, 486 (Iowa 2014) (holding "corrective measures to address previous misconduct are a mitigating factor"). Moreover, Noel has no prior history of disciplinary action, though his misconduct did begin shortly after he was admitted to the bar. *See Tofflemire*, 689 N.W.2d at 92.

Upon our de novo review of the record and consideration of the mitigating and aggravating factors, we suspend Noel's license for an indefinite period of at least one year from the date of filing this opinion.

**IV. Conclusion.**

We suspend Noel's license to practice law in Iowa indefinitely for a period of at least one year from the date of filing this opinion. This suspension applies to all facets of the practice of law. Iowa Ct. R. 34.23(3). Noel is required to notify all clients as outlined in Iowa Court Rule 34.24. Additionally, to establish his eligibility for reinstatement, Noel must file an application for reinstatement pursuant to the requirements of Iowa Court Rule 34.25. We tax the costs of this action to Noel in accordance with Iowa Court Rule 36.24(1).

**LICENSE SUSPENDED.**

**WIGGINS, Justice (dissenting).**

I dissent.

Noel pled guilty to theft in violation of Iowa Code sections 714.1(3), 714.2(4), and 714.3 (2013). The Code provides,

> A person commits theft when the person does any of the following:
>
> . . . .
>
> 3. Obtains the labor or services of another, or a transfer of possession, control, or ownership of the property of another, or the beneficial use of property of another, by deception.

*Id.* § 714.1(3).

The applicable definition of "deception" under the Code consists of knowingly "[c]reating or confirming another's belief or impression as to the existence or nonexistence of a fact or condition which is false and which the actor does not believe to be true." *Id.* § 702.9(1). This definition makes fraud an element of theft by deception. *See State v. Wilson*, 573 N.W.2d 248, 252 (Iowa 1998). By pleading guilty, Noel acknowledged that at the time he submitted his claims with the Iowa State Public Defender, he knowingly committed fraud in violation of the law.

As I have previously said,

> We, as a court and as the regulatory body for our profession, have an obligation to protect the public from dishonest attorneys. I echo the beginning of this dissent— *dishonesty is a trait that disqualifies a person from the practice of law.* A person who uses his law license to steal money or aids another to do so is per se unfit to practice law. Cases like this give the public the perception that a license to practice law is a license to steal.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bieber*, 824 N.W.2d 514, 534 (Iowa 2012) (Wiggins, J., dissenting).

For the reasons stated in my dissent in *Bieber,* I would revoke Noel's license to practice law. *See id.* at 530–34. A revocation allows him the opportunity to reapply for his license after at least five years under our recently amended Iowa Court Rule 34.25(7)–(9) (2018).