# IN THE SUPREME COURT OF IOWA

No. 22–0965

Submitted September 14, 2022—Filed October 14, 2022

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**JEFFREY MICHAEL JANSSEN,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

In an attorney disciplinary action, the grievance commission recommends an eighteen-month suspension of the attorney's law license based on violations of our attorney ethics rules. **LICENSE SUSPENDED.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

Tara van Brederode and Allison Anne Schmidt, Des Moines, for complainant.

Jeffrey Michael Janssen, Des Moines, pro se.

**CHRISTENSEN, Chief Justice.**

This attorney disciplinary matter is a lesson in what happens when an attorney abuses the legal system in an effort to resolve his clients' cases. He made misrepresentations to the court and filed meritless motions to unreasonably delay various hearings. Likewise, he neglected to keep his clients informed and repeatedly disparaged opposing counsel with unsubstantiated claims. In the midst of all this, and before the Iowa Supreme Court Attorney Disciplinary Board (Board) filed its complaint in this matter, his license was administratively suspended for failure to file annual reports regarding continuing legal education and client security funds.

Just as he did not show up for trial in one of the matters at issue, the attorney did not participate in these disciplinary proceedings. His decision not to participate left the grievance commission with little choice but to deem the allegations admitted, and the commission recommended an eighteen-month suspension of the attorney's license. On our de novo review, we find the same violations of our ethics rules and impose a twelve-month suspension.

**I. Factual and Procedural Background.**

Jeffrey Janssen obtained his Iowa law license in 2016 and maintained a private law practice in Des Moines alongside another attorney. This case arises from Janssen's representation of one client in a child support matter and another client in a child custody matter. Neither party contests the commission's factual findings, and we agree with those factual findings below upon our de novo review of the record.

**A. Child Support Matter (Count I).** Victor Rodriguez hired Janssen around February 24, 2017, to represent him in an administrative child support proceeding in Union County for a child that Rodriguez fathered with Ashley Page. The State represented the Iowa Child Support Recovery Unit to collect child support from Rodriguez. Initially, Page did not have legal representation but soon lawyered up after receiving the following letter from Janssen threatening to seek full custody of her son on his client's behalf if she did not consent to his client's desire to terminate his parental rights over that same child:

> I represent Victor Rodriguez in an action against you, as an interested party, to terminate parental rights of W.M.P., a minor child. I hope that you are in agreement to this process. If so, things will go a lot smoother if I can get your cooperation in this matter. If not, Victor will be seeking full custody of your son, W.M.P.

Page retained attorney David Jungmann. The parties participated in a hearing on March 31 that resulted in a district court order establishing Rodriguez's support at $450 per month beginning April 1. The district court reserved the remaining issue of retroactive support for a final hearing on April 21.

The second hearing could not proceed as scheduled because Janssen informed the court at the outset that he would be filing a motion to disqualify Jungmann. His subsequent motion alleged Jungmann should be disqualified because he previously represented Jacqueline Rodriguez—Victor Rodriguez's ex-wife—in the couple's 2008 dissolution proceedings. Janssen's motion also made various unsubstantiated claims that Jungmann had a "personal vendetta" against and "a physical altercation" with Victor Rodriguez. Additionally, Janssen accused Jungmann of "coaching witnesses who were under the influence to

testify against [Victor] Rodriguez on the stand." The motion attached Jungmann's appearance as Jacqueline's attorney and Jacqueline's answer in the 2008 dissolution proceedings, but there was no support for Janssen's other allegations in the motion.

Before the hearing on the motion to disqualify could occur, Janssen also filed a motion to quash a subpoena on May 9 that Jungmann had served on Rodriguez's employer in search of wage information from 2014 to the present related to the issue of retroactive child support. In the motion to quash, Janssen characterized Jungmann's subpoena as "another attempt by Attorney Jungmann to take out his personal vendetta against [Rodriguez]" and argued the wage information was "beyond the scope of the issues left to be resolved in this matter." The district court conducted a hearing on May 19, which resulted in the denial of the motion to disqualify as well as the motion to quash the subpoena for Rodriguez's income and employment records. The district court then rescheduled the retroactive support hearing for July 24.

In the meantime, Janssen's colleague, Dallas Janssen (Dallas), filed a notice with the district court that months earlier he filed for Chapter 13 bankruptcy on Rodriguez's behalf. The district court rescheduled the hearing yet again so Page could seek relief in the bankruptcy court for the child support that Rodriguez owed. The retroactive support hearing eventually occurred on January 30, 2018—months after it was initially set for hearing—/and the district court issued a ruling ordering Rodriguez to pay retroactive support on February 28 in the amount of $3,280.68.

Additionally, the district court sanctioned Janssen personally under Iowa Rule of Civil Procedure 1.413(1), reasoning:

> [T]he court is . . . concerned with the motions to disqualify counsel and to quash the subpoena. They were neither warranted in fact nor law and the court questions whether they were filed in good faith. The motions were filed, and signed, by Victor's counsel.
>
> The motion to disqualify included the allegation that: "It is clear that Attorney Jungmann and Rodriguez have a past together and that Attorney Jungmann has a personal vendetta against Rodriguez." The allegation is unfounded and the motion should not have been filed. The motion to quash was filed raising issues which Rodriguez did not have standing to address and sought to prevent access to Victor's wage information. This is a case about how much child support Victor should pay; that motion should not have been filed.
>
> The court had the opportunity to view counsel in chambers and in the hearing. It appeared to the court that Mr. Janssen desired to try Mr. Jungmann as much as Mr. Janssen sought to present argument and evidence for Victor. The motions to disqualify and quash delayed the proceedings and wrongly increased Ashley's attorney's fees.

The court ordered Janssen to pay Page $1,000 "as a sanction which represents a portion of her unnecessarily incurred attorney's fees" and "ought to quell bogus motions." Janssen took more than a year to pay the sanction and accrued interest.

**B. Child Custody Matter (Count II).** In September 2017, Chloe Lockhart hired Janssen to represent her in a child custody dispute between Lockhart and Daniel Harden, Jr. in Polk County. Shortly thereafter, Lockhart relocated to Indiana, where she was stationed as a sergeant in the U.S. Army Reserves on active duty. On October 29, the district court granted Lockhart temporary primary physical care of the parties' child. The district court set the custody trial

for June 27, 2018. Prior to the trial, the parties' attorneys discussed the possibility of continuing the trial but an agreement was never reached.

Janssen went on vacation from approximately June 16 to June 25. Before he left, he failed to comply with the trial scheduling order, which required filing a witness and exhibit list. Furthermore, he did not file a motion to continue the trial, which was set to commence only two days after his return from vacation.

On the eve of trial, Harden's attorney filed a motion in limine seeking to exclude Lockhart from presenting witness testimony or offering exhibits because she failed to file witness and exhibit lists. At 4:13 p.m. that day, the case coordinator emailed the parties to inform them that the district court would hear their case "in Courtroom 310 tomorrow." In what appears to be a response to the motion in limine and the case coordinator's communication, Janssen replied at 4:24 p.m. to inform them that he "just filed a Motion to Stay pursuant to 50 U.S.C. App. § 522 [of the Servicemembers Civil Relief Act]" and attached the motion to the email. Janssen's motion declared that his client's "ability to defend is materially affected by her current active military duties," and he attached two letters in support of this claim: one from Lockhart and one purportedly from her commanding officer.

Lockhart's letter explained that her Army position "has kept me in Indiana for training and to serve and has made it so I have not been able to properly prepare for trial. I requested leave in order to prepare for trial but was unable to do so." The letter purportedly from her commanding officer stated that Lockhart's "ACTIVE DUTY status has kept her in Indiana and has made it so she has not

been able to properly prepare for trial. Leave was not authorized and at this time, is not available, for her to prepare for trial." The commanding officer's electronic signature on the letter was admittedly typed by Janssen but did not include any indication that he was signing it at the commanding officer's direction.

Janssen emailed Lockhart after filing the documents, instructing her that he "would still like the signed copy [of the letter]" from her commanding officer "when you receive it." He also told her he would "be at the Courthouse tomorrow . . . in room 310. Please do not be there but be available in case you need to come quickly." Lockhart inquired, "[W]hat time will you be there so I could be ready if I need to come there," but Janssen did not respond. The district court judge emailed the parties at 5:10 p.m., writing in relevant part,

> I expect to see all of you tomorrow promptly at 9. I will be particularly interested in hearing why this rather significant fact about Respondent's active duty status is just now coming to light given that the order setting this matter for a two-day nonjury trial was filed on February 5, 2018—almost five months ago.

Janssen did not appear at the hearing the next day or send substitute counsel on his behalf. The district court eventually reached him via telephone for the hearing. Despite the district court's expectation "to see all of you" at the hearing, including Lockhart, Lockhart followed Janssen's instructions and did not show up or participate in the hearing. Janssen claimed he could not appear in person because he had a migraine.

Janssen told the district court that he incorrectly assumed "there was a continuance that was going to be agreed upon by all parties . . . . But then it didn't happen." Nevertheless, he assumed that his staff was going to file a

continuance while he was on vacation, which also did not occur. During the hearing, Janssen was not forthcoming about the fact that he had electronically signed the commanding officer's letter attached to his motion without the officer's authorization.

Although the district court "reluctantly" granted a ninety-day stay, it sustained Harden's motion to modify the temporary custody order to change custody from Lockhart to Harden until the new trial date to maintain the relationship between the child and the guardian ad litem, who was located in Iowa. Despite Janssen's assurances to the district court at the hearing that he would inform Lockhart of the custody modification, he did not do so. Instead, Lockhart discovered the change in custody when she arrived at Harden's home two days after the hearing to pick up the child in accordance with the prior temporary custody order.

Lockhart discharged Janssen on July 10, and Janssen filed a motion to withdraw on July 16. Attorney Brittany Sandler filed a limited appearance on Lockhart's behalf on July 16, along with a motion to amend, enlarge, and/or reconsider. This motion included an affidavit from Lockhart acknowledging she signed the letter attached to Janssen's motion to stay after he told her he needed it signed and returned immediately. Nevertheless, Lockhart noted she was "confused as to why I needed to sign the paperwork because I never told my attorney that I was unable to attend the trial dates in June due to being deployed to Indiana. And moreover, I was already present in Iowa, and was prepared to go to trial."

The district court addressed the motion to amend and Janssen's motion to withdraw at a hearing on August 16. At the hearing, Janssen maintained Lockhart was not prepared for trial. When the district court asked him whether he authored the letter from Lockhart's commanding officer, Janssen conceded, "I authored that and sent that to the commanding officer, yes." When asked whose signature was on the commanding officer's letter, Janssen answered, "I believe that's my signature, but I had approval from the commanding officer to do that" and claimed he had proof of this approval in an email. Janssen never provided such proof.

The district court granted Janssen's motion to withdraw but denied Lockhart's motion to amend, characterizing Lockhart's actions in signing the documents from Janssen as "deceitful separate and apart from Mr. Janssen's actions." Lockhart ultimately proceeded without counsel, which resulted in the entry of an order on November 12 establishing paternity and awarding Harden with primary physical care of the child, as well as setting visitation and child support.

**C. Disciplinary Proceedings.** On October 25, 2021, Janssen's law license was administratively suspended for failing to comply with Iowa Court Rule 41.4[1] and Iowa Court Rules 39.1 through 39.13.[2] Shortly after that suspension, which still remains in place, the Board filed a complaint against Janssen, alleging he

---

[1]This rule establishes the annual fee and reporting requirements regarding continuous legal education that an attorney must submit to the commission.

[2]The court rules in chapter 39 govern an attorney's obligations to Iowa's client security commission.

violated several rules of professional conduct while representing Rodriguez and Lockhart. Janssen was properly served with the complaint but did not file an answer.

During the commission's December 8 scheduling conference call, Janssen indicated that he would not participate in the disciplinary proceedings and did not object to the hearing date. Janssen did not respond to the Board's motion filed that day to deem the allegations in its complaint admitted. Accordingly, the commission entered an order on February 22, 2022, granting the Board's motion and limiting the grievance hearing to the issue of the appropriate sanction for Janssen's ethical violations. *See* Iowa Ct. R. 36.7 ("If the respondent fails or refuses to file an answer within the time specified, the allegations of the complaint are deemed admitted, and the matter will proceed to a hearing on the issue of the appropriate sanction.").

Janssen filed no documents or correspondence in the disciplinary proceeding and did not appear or otherwise participate in the March 29 hearing. The Board submitted a posthearing brief seeking a suspension of Janssen's law license "for an indefinite period of at least twelve to eighteen months." Janssen did not file a posthearing brief. The commission filed its written report on June 7, recommending an eighteen-month suspension of Janssen's law license for violating the following rules of professional conduct, many of which occurred in his representation of clients in both matters: 32:1.3 (diligence), 32:1.4 (communications), 32:3.1 (meritorious claims and contentions), 32:3.2

(expediting litigation), 32:3.3(a)(1) (candor toward the tribunal), 32:4.4 (respect for rights of third persons), and 32:8.4 (misconduct).

In reaching this sanction, the commission explained, "Janssen's decision not to participate in the grievance process leaves the Commission with no mitigating factors for consideration." Further, the commission considered Janssen's "total lack of participation" in the disciplinary proceedings as an aggravating factor in reaching its decision. It also found the following aggravating factors: harm to clients and third parties, violation of multiple rules, and the administrative suspension of Janssen's law license that resulted from his failure to comply with Iowa Court Rules 41.4 and 39.1 through 39.13.

**II. Standard of Review.**

"Even when a lawyer opts not to participate in disciplinary proceedings as [Janssen] has done here, we still review de novo the alleged violations and evidence to ensure that the Board has proved each allegation of misconduct by a convincing preponderance of the evidence." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. O'Brien*, 971 N.W.2d 584, 589 (Iowa 2022). We respectfully consider the commission's factual findings, but they are not binding. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Noel*, 923 N.W.2d 575, 582 (Iowa 2019). Likewise, we "have the discretion to 'impose a greater or lesser sanction than what the commission has recommended upon proof of an ethical violation.' " *Id.* (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Mathahs*, 918 N.W.2d 487, 489 (Iowa 2018)).

**III. The Sanction for Janssen's Ethical Violations.**

Neither party contests the commission's legal conclusions, and we agree with those legal conclusions based on our own analysis of the record. Thus, our remaining task is to determine the appropriate sanction for Janssen's misconduct. To do this, we examine various factors, including any mitigating and aggravating circumstances, "the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and [our] duty to uphold the integrity of the profession in the eyes of the public." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kieffer-Garrison*, 951 N.W.2d 29, 37 (Iowa 2020) (alteration in original) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Watkins*, 944 N.W.2d 881, 889 (Iowa 2020)).

Janssen's "failure to participate in the proceedings leaves us in the dark about mitigating factors to consider." *O'Brien*, 971 N.W.2d at 593. While the misconduct at issue began less than a year after Janssen was admitted to the Iowa bar, we do not consider his inexperience to be a mitigating factor as we have in some previous cases. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 155 (Iowa 2018). Frankly, little experience is necessary to appreciate the wrongdoing inherent in Janssen's misrepresentations and deceit. *Id.* Janssen's "silence is a potential missed opportunity to advocate for a more lenient sanction." *O'Brien*, 971 N.W.2d at 594.

Various aggravating factors influence our sanction in this case. Janssen's dishonesty in electronically signing the commanding officer's signature on a letter Janssen authored without the officer's consent, as well as his advice to

Lockhart to disobey a court order warrant a "substantial sanction[] ranging from permanent disbarment to [a] six-month license suspension[]." *Kieffer-Garrison*, 951 N.W.2d at 38 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kallsen*, 814 N.W.2d 233, 239 (Iowa 2012)). Janssen misled the court to believe that Lockhart was unavailable when, in fact, she actually was available and Janssen had told her not to attend the hearing.

> Time and again, we have explained that
>
> [f]undamental honesty is the base line and mandatory requirement to serve in the legal profession. The whole structure of ethical standards is derived from the paramount need for lawyers to be trustworthy. The court system and the public we serve are damaged when our officers play fast and loose with the truth.

*Id.* (alteration in original) (quoting *Kallsen*, 814 N.W.2d at 239). Janssen played fast and loose with the truth to the detriment of everyone involved.

Moreover, Janssen abused the legal system through his repeated attempts to avoid resolving his cases. This cycle of neglect harmed clients and third parties and wasted court time and resources. *See, e.g., O'Brien*, 971 N.W.2d at 593 (noting client harm is an aggravating factor in sanctioning attorney misconduct). For example, as the commission noted,

> Ms. Page had to hire an attorney to represent her interests in Mr. Rodriguez's bankruptcy proceeding, and exhausted all of her available paid time off from work to attend the multiple hearings caused by the motions filed by Mr. Janssen. All totaled, Ms. Page paid Mr. Jungmann approximately the same amount that Ms. Page was ultimately awarded in retroactive support.

(Footnote omitted.)

Likewise, his delay tactics in the child support matter compromised court efficiency and resulted in a lengthy period of uncertainty for his client as to the

amount of child support arrearage he owed until the district court made a final determination. We are also left to wonder if Lockhart would have fared better in her quest for primary physical care if the trial had been held as scheduled instead of being continued at Janssen's insistence, which resulted in the loss of her temporary primary physical care pending final trial. Couple that with the district court's finding that she was "deceitful separate and apart from Mr. Janssen's actions," it is not a stretch to hypothesize that she was harmed by Janssen's representation.

Although "[a]ttorney neglect cases typically result in sanctions anywhere from a public reprimand to a six-month suspension," "we impose more severe sanctions when neglect violations are accompanied by other violations or aggravating factors." *Id.* at 591. Here, Janssen also misled his clients, made frivolous filings, made misrepresentations to the district court, and unnecessarily delayed litigation. Janssen's treatment of opposing counsel in the Rodriguez case exemplifies the sort of "damaging consequences" of attorney incivility that we have cautioned about in the past, including "higher litigation costs for the client via needless arguing," "hearings on [unnecessary] motions that could have been avoided if the parties acted reasonably," and "the depletion and waste of judicial resources." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Rhinehart*, 953 N.W.2d 156, 173 (Iowa 2021) (Christensen, C.J., concurring specially) (quoting David A. Grenardo, *A Lesson in Civility*, 32 Geo. J. Legal Ethics 135, 145 (2019)).

To make matters worse, Janssen ignored the disciplinary process altogether. *O'Brien*, 971 N.W.2d at 593 ("[An attorney's] failure to participate in the commission proceedings is also an aggravating factor."). Janssen's apparent "lack of interest not only mocks the disciplinary process but casts serious doubt on [his] true commitment and dedication to rectify [his] past conduct and adhere to the highest standards of professional conduct in the future." *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Lyzenga*, 619 N.W.2d 327, 333 (Iowa 2000) (en banc). It "suggests an overall attitude of disrespect and disregard for this profession." *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Ramey*, 639 N.W.2d 243, 246 (Iowa 2002). This disregard for the disciplinary process is only amplified by the fact that Janssen's license is currently suspended independent of any activity in this case because of his disregard for Iowa Court Rules 41.4 and 39.1 through 39.13. *See O'Brien*, 971 N.W.2d at 593. Janssen's apparent lack of remorse for his misconduct is another "powerful aggravating factor in this case because a major role of our disciplinary system is to protect the public from overreaching and unethical lawyers." *Kieffer-Garrison*, 951 N.W.2d at 40 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Parrish*, 925 N.W.2d 163, 182 (Iowa 2019)).

The commission reached its recommended sanction of an eighteen-month suspension based on its conclusion that this case closely resembles *Iowa Supreme Court Attorney Disciplinary Board v. Cunningham*, 812 N.W.2d 541 (Iowa 2012). There, we suspended an attorney's license for eighteen months because he similarly neglected two client matters by failing to communicate with clients, unnecessarily delayed litigation, made misrepresentations both to clients

and officers of the court, and failed to respond to the board's complaint or participate in the disciplinary proceedings. *Id.* at 550–52. But that attorney also " 'just left' his practice" without warning, leaving other attorneys in his office to take over representation in around twelve cases that he had abandoned. *Id.* at 543–44. Although troubling, Janssen's misconduct did not go quite that far.

In *Iowa Supreme Court Attorney Disciplinary Board v. Aeilts,* we recently suspended an attorney's license for six months due to his misrepresentations about his professional experience and the false report of a crime that led to a malicious prosecution conviction, in addition to his conviction for operating a motor vehicle while intoxicated. 974 N.W.2d 119, 123 (Iowa 2022). In doing so, we relied on analogous cases, including *Iowa Supreme Court Attorney Disciplinary Board v. McGinness,* 844 N.W.2d 456 (Iowa 2014). As we noted in *Aeilts, McGinness* involved the suspension of an attorney's license for six months after "he falsified the certificate of service on civil discovery requests he failed to send to opposing counsel and then doubled down to the point of hiring a handwriting expert to support his insistence he had not copied the certificate from another filing when confronted." *Aeilts,* 974 N.W.2d at 129 (summarizing the misconduct at issue in *McGinness,* 844 N.W.2d at 462–63). But those disciplinary cases involved fewer aggravating factors and more mitigating factors than Janssen's, in part because those attorneys cooperated with the disciplinary board. *See id.* at 131; *McGinness,* 844 N.W.2d at 464.

Ultimately, Janssen's case is not as severe as the misconduct that warranted an eighteen-month suspension in *Cunningham,* yet more troublesome

than the circumstances that led to six-month suspensions in *Aeilts* and *McGinness*. Given the nature of Janssen's violations, the number of aggravating factors, and the absence of any mitigating factors, the public and the legal profession are best served through a twelve-month suspension of Janssen's license.

**IV. Disposition.**

We suspend Janssen's license to practice law with no possibility of reinstatement for twelve months.[3] This suspension applies to all facets of the practice of law under Iowa Court Rule 34.23(3). Janssen must comply with the notification requirements to his clients in Iowa Court Rule 34.24. At the conclusion of this suspension, Janssen still must become compliant with Iowa Court Rule 41.4 and Iowa Court Rules 39.1 through 39.13 before he can be reinstated to practice law. We tax the costs of this action to Janssen under Iowa Court Rule 36.24(1).

**LICENSE SUSPENDED.**

---

[3]In line with our recent approval of an amendment to rule 34:23(1), Janssen's suspension will commence ten days from the date of this decision.