# IN THE COURT OF APPEALS OF IOWA

No. 21-1997
Filed February 8, 2023


**DESMOND DEANDRE REEVES,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____


Appeal from the Iowa District Court for Jackson County, Stuart P. Werling,

Judge.


Desmond Reeves appeals the denial of his application for postconviction

relief. **AFFIRMED.**


Chris Raker, East Dubuque, Illinois, for appellant.

Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee State.


Considered by Bower, C.J., and Greer and Badding, JJ.

**BADDING, Judge.**

Pinning his hopes for a new trial on claims of a distracted trial attorney and misconduct by a spectator at his jury trial, Desmond Reeves appeals the denial of his application for postconviction relief.  We affirm.

I.      **Background Facts and Proceedings**

In 2017, Desmond Reeves was convicted by a jury of first-degree robbery and assault with intent to inflict serious injury.  His convictions were affirmed on direct appeal.  *See generally State v. Reeves*, No. 17-0812, 2018 WL 3650300 (Iowa Ct. App. Aug. 1, 2018).

Reeves filed a pro se application for postconviction relief in 2019, merely claiming: "It was never a robbery a lot of evidence was looked over."  In an amended application, court-appointed counsel filled in the blanks by alleging that trial counsel was ineffective for failing to (1) inform Reeves that he had been charged with theft and "was facing a possible loss of his license" for his billing practices with the public defender's office, and (2) "ask for a curative instruction after a person in the gallery was taking pictures of jurors."[1]

Trial on the application was held in December 2021.  Expanding on his original complaint, Reeves testified: "I really went to buy some weed from these people, and I end up shooting the guy. . . .  I would have been more acceptant to me getting charged with an attempted murder because I confessed to shooting this

---

[1] Although not reprised on appeal, Reeves also claimed counsel was ineffective by "fail[ing] to have the BB guns tested for fingerprints."  And in a subsequent amendment to his application, Reeves claimed counsel was ineffective in failing to lodge a fair-cross-section challenge.

man."[2]   Reeves testified his trial attorney, Matthew Noel, did not "try to get an investigator" to look into some Facebook messages a co-defendant sent that would have shown Reeves's "intentions was to go buy some weed."  And he said that even though his family paid Noel "all the money we had," the attorney only met with him a total of two times.  As a result, Reeves didn't believe the case was ready for trial.  But he said that Noel told him, "We got to keep the prosecutor's feet under the fire."   Reeves maintained Noel made these mistakes because he was distracted by his own pending criminal charges, which he testified Noel did not tell him about.  Reeves said that, if he had been informed, he "would not have hired that man."

Noel also testified.  He explained that although charges for second-degree theft were not filed against him until mid-2016, he had known about the billing issues that prompted the charges since December 2013.  Noel did not enter his appearance in Reeves's case until January 2017, after being retained by Reeves's mother.  He specifically remembered telling Reeves about the charges when he visited him in jail, noting he used the fact that they were facing a common situation as a trust-building tool.  Noel maintained that his criminal situation had no impact on his representation of Reeves because of how long he had known about the issues giving rise to the charges.  He also explained that by the time of Reeves's trial in April 2017, he knew that he would be pleading to lesser charges with no jail time.  And while an attorney disciplinary report had been filed against Noel in early

---

[2] Reeves *was* charged with attempt to commit murder but found guilty of the lesser-included offense of assault with intent to inflict serious injury.

2014, those proceedings were on hold during his representation of Reeves because the board was waiting for Noel's criminal charges to be resolved.[3]

As for Reeves's claim the case was rushed to trial, Noel recalled "[e]xtensively" discussing speedy trial with Reeves, who "never indicated to [him] once that he wanted to waive at all or anything like that." Overall, Noel thought he "had everything [he] needed to go to trial and felt that [he] was very prepared for trial." He elaborated: "[T]here was nothing that the State brought up at trial that I wasn't ready for." And he knew their chances to win at trial were better if he "didn't wait months for people to discover the things that [he] had discovered" and were not "at the State's attention at the time." For example, Noel testified that "Reeves was really concerned if [the State was] gonna do a DNA test" on a shirt in its crime lab's possession. Noel thought the State would be hard-pressed to get that done if speedy trial was demanded. He also thought it would be harder for the State to gain the cooperation of Reeves's co-defendants if they proceeded to trial quickly, particularly an accomplice who had escaped from jail.

With respect to Reeves's claim about a spectator taking a picture of the jury, Noel recalled it was a county supervisor who came into the courtroom to take a picture of his brother-in-law serving on the jury. Another juror reported this to the court, and Noel testified the judge got to the bottom of it and remedied the situation before they even knew about it. Noel said that when the judge told them what had happened, the judge explained, "This is a nothing. [The reporting juror]

---

[3] Noel pled guilty to two counts of fourth-degree theft in June 2017, and the attorney disciplinary board filed its complaint in October. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Noel*, 923 N.W.2d 575, 581 (Iowa 2019). This supreme court opinion was admitted as evidence at the postconviction-relief trial.

understands now that this was the county supervisor." So Noel was not concerned. And the next day, the court made the following statement to the jury on the record:

> Ladies and gentlemen, I know that there was some concern yesterday at the conclusion of the case that someone had taken a photograph of the jury. Law enforcement was able to very quickly determine who that individual was, was able to determine and assure me that that picture was not taken with any malice or ill-intent, or in any way to harass you or bother you. It was just kind of a dumb thing that was done.
> The picture has been deleted. I just want you to be confident that that won't happen again. And anybody that's in the gallery, you're not allowed to take photographs, although I don't think we'll have problems with anybody that's here right now. So I wanted to hopefully put you at ease in that regard.

Noel didn't think about requesting a mistrial at the time because he thought their defense was playing well with the jury. He did wonder about the issue after the trial was over and thought that he probably would have moved for a mistrial if the case had been in a different county, like Polk or Scott. But since it was a rural county where "everybody kind of knows everybody," and because he felt the judge had handled the matter sufficiently, Noel testified the only reason he could think of to make the motion would be to preserve the issue for appeal. On the other hand, Noel testified that if he had moved for a mistrial and it was granted, they would have had to start all over after showing their cards to the State and giving it "an opportunity to prepare for the things" that Noel felt were going their way at trial.

After hearing this testimony, the district court denied Reeves's application for postconviction relief. The court ruled that "Noel simply was not distracted" by his personal matters, not waiving speedy trial was strategically sound, and Reeves approved of that strategy. The court also found that counsel made a strategic

decision to not move for a mistrial after the photograph incident and Reeves failed to prove he was prejudiced by that decision.

Reeves appeals, contending the court erred in rejecting his ineffective-assistance claims because counsel (1) was distracted by his own pending criminal charges and (2) failed to request a "jury instruction clarifying who the person was taking photos of the jury."

## II. Analysis

We review postconviction-relief applications raising claims of ineffective assistance of counsel de novo. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). To prevail, Reeves must show by a preponderance of the evidence that (1) counsel failed to perform an essential duty, and (2) this failure resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Sothman*, 967 N.W.2d at 522. Failure to prove either prong will preclude relief. *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017).

### A. Distracted Counsel

On his claim of distracted counsel, the only alleged deficiencies Reeves points to that show the "effect of the stress of the pending criminal charges" on his trial attorney are the "lack of visits and failure to get Facebook messages," as well as counsel's advice to not waive speedy trial. This all boils down to an insinuation that counsel rushed to trial, despite being unprepared, because of his personal matters.

Beginning with the claimed lack of visits, Noel testified that he visited Reeves five or six times in jail. Because Reeves has not shown how more visits would have changed the outcome, he is not entitled to relief on this point. *See*

*Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) ("When complaining about the adequacy of an attorney's representation, it is not enough to simply claim that counsel should have done a better job. The applicant must state the specific ways in which counsel's performance was inadequate and identify how competent representation probably would have changed the outcome." (internal citation omitted)).

And because Reeves did not produce the allegedly exculpatory Facebook messages, Reeves cannot prove he was prejudiced by that supposed failure. *See Banks v. State*, No. 21-0787, 2022 WL 1232208, at *2 (Iowa Ct. App. Apr. 27, 2022) ("Banks took no action to obtain the purported records to support his claim for relief. Banks had the opportunity to develop a full record in this [postconviction-relief] proceeding to support his claim but failed to do so. While Banks provided his 'own subjective, self-serving testimony' concerning his claim for relief, he did not provide 'objective corroborating evidence' to support his claim." (citations omitted)).

Turning to the speedy-trial demand, Noel testified that after extensive discussions with Reeves, they made a strategic decision to "strike while the iron was hot" in an effort to undercut the State's ability to prepare, piece its case together, process certain DNA evidence in time for trial, and locate a potential accomplice witness who was on the lam. In our view, counsel's advice to push forward with trial was a reasonable tactical decision that does not amount to ineffective assistance. *See State v. Polly*, 657 N.W.2d 462, 468–69 (Iowa 2003). On the prejudice side, Reeves argues waiving speedy trial would have given him "enough time to find other counsel that was not facing pending criminal charges."

But, again, he does not identify how a different attorney would have changed the outcome. *See Dunbar*, 515 N.W.2d at 15.

Ending with the overall insinuation that counsel was ill-prepared for trial because he was distracted by his own criminal matter and looming ethical proceeding, the record simply contradicts that claim. A review of the criminal trial transcript, as the State points out, "does not depict a defense attorney beleaguered by personal issues and performing deficiently. It shows conscientious, reasonable representation." (Footnote omitted.) The record supports Noel's testimony that he was prepared for trial. And the court found Noel was credible in testifying that his pending charges had no effect on his representation of Reeves, with the court concluding "Noel simply was not distracted." Deferring to this credibility assessment, we conclude Reeves did not prove ineffective assistance on this issue. *See Sothman*, 967 N.W.2d at 522 ("[W]e give weight to the lower court's findings concerning witness credibility." (citation omitted)).

### B. Photograph of Jury

Reeves next claims counsel was ineffective for failing to move for a mistrial or ask for a curative instruction after someone in the gallery photographed the jury. He points out the person who took the photograph was on his family's side of the courtroom. Reeves argues that because he is "a Black Male from Chicago," this "would definitely put the jurors in a state of panic" or, at the least, cause them to "subconsciously blame" Reeves for the photograph.

Yet Reeves agrees mere conceivability that the jury or the outcome was influenced is not enough to prove prejudice. *See Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) ("A showing that the error 'conceivably could have

influenced the outcome' of the proceeding is not enough. Rather, the effect must be affirmatively proven by a showing 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (citations omitted)). And it would be a stretch to find it even conceivable that the jury was placed in a "state of panic," given that only one juror noticed the picture-taking, the judge investigated it and explained to that juror that nothing nefarious was going on, and the judge later explained to the entire jury that law enforcement investigated and no malice was present. Indeed, the jury's verdict—finding Reeves guilty of assault with intent rather than the heightened charge of attempted murder—is evidence contrary to Reeves's claim that the photograph situation made the jury want to punish him. *Cf. State v. Taylor*, 689 N.W.2d 116, 130 (Iowa 2004) (finding acquittal on one charge showed lack of motivation for "the fact finder to categorically rule against the defendant"); *State v. Rodriguez*, 636 N.W.2d 234, 243 n.4 (Iowa 2001) (noting jury would have convicted of attempted murder, rather than acquit, if it had been motivated by hostility). As for the claim that counsel should have requested a curative instruction, that is basically what the court did. We accordingly find no prejudice resulted from these claimed missteps by counsel.

### III. Conclusion

We affirm the district court's denial of Reeves's application for postconviction relief, finding Reeves failed to meet his burden to prove ineffective assistance.

**AFFIRMED.**